THOMASON ET AL. VS. CRAIGHEAD ET AL.

1.  JUDICIAL SALES:  *Within the control of the Court.*
    In sales under a decree in chancery the court is the vendor, and will confirm or reject the sale as the law or justice of the case may require.
2.  ———:
    At a sale made under a decree for partition, the land was offered at an unusually early hour, and sold for less than its value, other persons who arrived after the sale would have bid more than the land sold for; held that the court did not err in setting the sale aside, and ordering a re-sale.

APPEAL from *Mississippi* Circuit Court in Chancery.
Hon. L. L. MACK, Circuit Judge.
*Lyles* for appellant.

HARRISON, J.:
G. W. Thomason, owning an undivided one-eighteenth part of a tract of about 2800 acres of land, known as the Craighead Plantation, in Mississippi County, filed his petition for partition, and upon the hearing obtained a decree therefor.

The commissioners appointed for the purpose, after an examination of the premises, reported to the court that partition could not be made, without great prejudice to the owners; whereupon the court made an order for the sale of the land, and directed that it be sold at the court house door, in Osceola, for cash in hand, to the amount of 5 per cent. of the purchase money, and on a credit, as to the remainder, of six, twelve and twenty-four months, in equal payments, and prescribed the notice to be given, and other conditions of the sale.

In pursuance of the order, the commissioners offered the land for sale on the 3d day of July, 1876, and certain parcels of the uncleared and unimproved land, amounting to 1066 acres, were bid off W. I. Bowen, for $100, and the rest by Thomason and E. B. Friend, for $1100.

Upon the coming in of the report of the commissioners, by which it was shown the purchasers had made the cash payments and given their notes, with security for the remainder of the purchase money, in compliance with the terms of the sale, James B. Craighead, and others of the owners, filed exceptions to the sale of the part purchased by Thomason and Friend, on the ground that the sale had been made at so early an hour in the day—eleven o'clock—bidders had not had time to arrive, and by reason thereof, the price at which it was sold was greatly inadequate, and did not exceed one-fourth of the value; and the court refused to confirm the sale to Thomason and Friend, and ordered a resale of the part bid off by them, and directed that the bidding should be started at $3000, as the bid of said Craighead.

From this order, refusing to confirm the sale to them, and directing a re-sale, Thomason and Friend appealed.

It appears, from the testimony of witnesses, that the sale took place shortly after eleven o'clock; that H. S. Brodie arrived at the place of sale about a half an hour after it took place, and

that he came for the purpose of bidding for the property, and would, if present, have bid or given $3000, that it was worth $2000 or $3000, and the part purchased by Thomason and Friend embraced all the cleared land, about seventy-five acres, and the improvements.

It is the well settled doctrine, or at least such is the theory, that the court is itself the vendor in sales made under its decree, and will confirm or reject the sale as the law and justice of the case may require. *Penn's adm'r*, v. *Tolleson*, 20 Ark., 652 ; *Sessions* v. *Peay*, 23 Ark., 39 ; *Deaderick* v. *Smith*, 6 Humph., 138 ; *Tooley* v. *Kane*, 1 S. and M. Ch. R., 518.

It is apparent that the sale, at the early hour at which it was made, operated unfavorably for the interests of the owners, and the court might very reasonably have considered, from its knowledge of the locality, and the practice in such cases, the hour unusually early and inopportune.

No reason is shown, but we suppose sufficient appeared to the court, for requiring the land in the resale to be offered at $3000 ; possibly it may not be bid, and the sale shall fail ; if so, it can direct it to be again offered without such restriction.

The decree of the court is affirmed.