## Nash v. Delinquent Lands.

### Opinion delivered January 26, 1914.

1. JUDICIAL SALE—CONFIRMATION.—A judicial sale is not complete until confirmed by the court. (Page 164.)

2. JUDICIAL SALE—PETITION TO SET ASIDE—NECESSITY OF CONFIRMATION.—In an action under Act 111, Acts 1907, to collect assessments levied against certain lands, where the lands are sold under order of the court, the sale is a judicial sale and is not complete until the sale is confirmed, and a petition asking that the sale be set aside, is filed in time, if filed before the confirmation. (Page 164.)

3. JUDICIAL SALE—FRAUD—DUTY TO CONFIRM.—While a judicial sale is incomplete until it is confirmed, it is the duty of the court, in the absence of fraud, irregularity or mistake affecting the validity of the sale, to confirm the same and to approve the deeds made to the purchaser. (Page 165.)

4. JUDICIAL SALE—PURCHASE PRICE—ADEQUACY.—When the purchaser at a judicial sale pays for the lands the amount of the judgment authorized against them under the statute, and no one, under fair competition in bidding, is willing to pay more, it can not be said that the purchaser paid an inadequate price. (Page 166.)

5. JUDICIAL SALE—EXCESSIVE ITEM—VALIDITY.—In a judicial sale an erroneous or excessive item included in the costs will not render the sale void. Such error or mistake will be corrected by the court before confirming the sale. (Page 166.)

6. JUDICIAL SALE—COLLUSIVE BIDDING—SUFFICIENCY OF EVIDENCE.—Evidence *held* to show at a judicial sale there was not that open, free, fair and competitive bidding which the law contemplates when lands are sold at a judicial sale. (Page 166.)

7. JUDICIAL SALE—PETITION TO PREVENT CONFIRMATION—ESTOPPEL.—A party is not estopped from seeking to prevent the confirmation of a judicial sale, where he accepted the excess over what his lands sold for at the sale, where he did not acquiesce in the sale, and accepted the excess under a misapprehension of the facts concerning the sale. (Page 166.)

Appeal from Craighead Chancery Court, Eastern District; *Chas. D. Frierson*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

On the 20th of October, 1910, the collector of Craighead County instituted this action in the chancery court for the Eastern District of Craighead County, on behalf of Drainage District No. 3 of that county, for the collection of certain assessments levied against certain lands, for the payment of interest, costs and bonds issued by Drainage District No. 3. The proceedings were had under the provisions of Act 111, approved March 26, 1907. The court rendered a decree ordering certain lands, described in the complaint, sold for the amounts found to be due against each of the said tracts respectively, and appointed a commissioner to advertise and make sale of the lands, and to convey the same to the purchasers. The commissioner was authorized to charge and collect for each sale made by him under the decree the sum of fifty cents and for each deed made and acknowledged the sum of two dollars, and to charge against each particular tract the proportional part of the cost of said suit that each tract bore to the whole number of tracts advertised.

The commissioner proceeded, according to the terms of the decree and the provisions of the law, to make the sale on the 9th of January, 1911. On August 14, 1911, he made a report to the chancery court to the effect that he had proceeded in accordance with the terms of the decree and the law, which he fully set forth in his report.

On August 16, 1911, Mary and L. H. D. Pierce filed their exceptions to the report of sale made by the commissioner, and also their petition to set the sale aside, in which they, among other things, set up that they were the owners of certain tracts of land which the commissioner, under the decree, had sold to one J. T. Wilkins; that the deeds made by the commissioner to Wilkins were a cloud upon their title; that the commissioner had no right to make the deeds; that the sale had not been con-

firmed or approved by the court; that the lands were worth $25 per acre; that Wilkins had purchased them at the sale for less than thirty cents an acre; that the court had no jurisdiction to render the decree under which the lands were sold; that no notice was given as the law requires; that the land was sold for less than the amount due; that because of the inadequacy of price for which the lands sold and the other matters alleged the court should refuse to approve the sales and permit the petitioners to redeem the lands by paying to Wilkins all sums which he had paid out and all sums which were justly due upon the lands.

The petitioners set forth that the drainage taxes and drainage assessments were not paid upon the lands by inadvertence of their agent who had been designated to pay the same. They tendered the amount of all such assessments and taxes, with interest and all sums that might be legally adjudged against the lands, and prayed that they might be allowed to redeem from the sale, and that the sale be set aside and the deeds cancelled, and for all proper relief.

Wilkins, the purchaser, and Nash, the collector, responded to the petition, setting up that the lands had been regularly sold under the decree of the court, alleging that it was not necessary for the sale to be confirmed by the court. Denied that the court was without jurisdiction, and that notice was not given. Denied that there was any irregularity in the proceedings, or that the land was sold for an inadequate price. Alleged that there was no right in the petitioners to redeem, and set up that the petitioners had been paid and had received the overplus for which the lands were sold over the amount due, including the taxes, interest and costs, and alleged that by such acceptance the petitioners had waived all the rights which they averred and pretended to have as set up in their petition, and prayed that the petition be dismissed.

The petitioners responded, denying that they had received any overplus for which the lands had been sold

above the amount due and owing to the drainage district, and denied that they had waived any of their rights, and renewed their prayer for relief as set up in their petition.

There was no denial that petitioners were the owners of the lands at the time they were condemned and were sold for the delinquent taxes due the drainage district; and there is a stipulation in the record to the effect that they had offered to pay the proper amount for redemption of the lands if same could be redeemed, and the deposit of such amount in court was expressly waived.

The court, after hearing the case, which was submitted upon the pleadings and exhibits, and documentary evidence and depositions of witnesses and exhibits thereto and the stipulation of counsel, decreed that the sale of the commissioner to Wilkins of certain tracts of land, which were described in the decree, and the deeds executed by the commissioner to Wilkins, be set aside and cancelled. The court further decreed that the amounts paid by Wilkins to Byrd, the commissioner, in pursuance of the purchase of the land, including drainage tax, penalty, interest, costs and overplus, together with interest on such amount from the date of the sale at the rate of 10 per cent per annum until paid, be refunded to J. T. Wilkins by the petitioners, and that if said amount was not so paid by petitioners to Wilkins in thirty days that the same be declared a lien on the lands, and the commissioner was directed to make sale of the lands to satisfy the decree if the amount adjudged against the petitioners was not paid.

*Basil Baker* and *Horace Sloan,* for appellant.

1. The court had jurisdiction to render the decree under which the sale was had, and its decree is not subject to collateral attack. 50 Ark. 188; 8 Am. & Eng. Enc. of L., 848, and cases cited.

2. There is no proof to contradict the record showing that notice of the sale was given in the manner and form required by law.

3. On the question of inadequacy of price, it appears from the record that the price offered and paid by Wilkins was sufficient to satisfy the demands of the decree; but mere inadequacy of price alone is not sufficient to overturn a sale. 20 Ark. 381; 44 Ark. 502; 56 Ark. 224; 45 Ark. 86; 57 Ark. 59; 48 Ark. 216; 2 Pomeroy, Equity Jur., § § 926, 927. And the evidence is wholly insufficient to. sustain the charge that there was a mutual agreement amongst certain bidders to keep down competition at the sale.

In the absence of such understanding the mere fact that other bidders failed to appear should not be allowed to overturn the legal and equitable rights of parties who were present and bidding. If Wilkins became a *bona fide* purchaser, he was entitled, if necessary, to have his title confirmed. 77 Ark. 216; 44 Am. St. 657.

4. If petitioners have any right to redeem it must be based upon the act of 1911, for the right did not exist under the law prior thereto. See Act 111, Acts 1907. The right to redeem is purely statutory. 105 Ark. 40, 42; 99 Ark. 324. In asserting such right, however, they place themselves in the inconsistent attitude, first, of disputing the legality of the sale, and, second, treating it as valid and asserting the right to redeem.

5. Under the law confirmation of the sale was not required. Confirmation is never necessary unless required by statute regulating the matter in question. 25 Mo. 584; 5 Mason, 420. Where our decisions have held that confirmation was necessary, it appears that they were based upon statutes requiring it. See 61 Ark. 80; 38 Ark. 78; 53 Ark. 445; 34 Ark. 346.

*Lamb & Caraway,* for appellee, Pierce.

1. It is clear from the evidence that there was an agreement to stifle competitive bidding. An express agreement to that end was not necessary; but there was a mutual understanding which was lived up to and carried out. The sale was void for collusive bidding. 46 Am. Dec. 58; 51 Miss. 348; 7 N. E. 52; 36 Ia. 519; 6 Mo.

App. 537; s. c. 77 Mo. 413; 23 Gratt. (Va.) 409, 428-9; Freeman, Void Jud. Sales, § 40; 17 Am. & Eng. Enc. of L. 980; 20 N. J. Eq. 159.

2. Inadequacy of price when coupled with other facts or circumstances suspicious in their nature, will justify a refusal to confirm; and it is a well recognized principle that where the consideration is so inadequate as to shock the judicial conscience, it is of itself conclusive evidence of fraud. 20 Ark. 652-661; 32 Ark. 391; 64 Ark. 126, 129-30; 17 Am. & Eng. Enc. of L. 1003; 21 N. E. 830; 107 Ill. 612; 64 S. W. 902; 10·Yerg. 294; 21 N. J. Eq. 328; 3 So. (Ala.) 107-111; 16 Atl. (N. J.) 9-11; 3 N. J. Eq. 489-496.

3. The addition of two dollars as cost of sale for each forty-acre tract for the deed to be made by the commissioner was an excessive charge not authorized by the statute, and renders the sale void.

4. The sale was not complete until confirmed by the court. The amendment to section 1436, Kirby's Digest, contains no intimation of any intention on the part of the Legislature to dispense with confirmation. Acts 1907, page 282, § 7. The second paragraph of the act, on page 285, prescribes the extent and manner in which proceedings may vary from ordinary chancery suits, but still there is no intimation that confirmation may be dispensed with. Act 49, Acts 1911, page 28, clearly indicates a legislative construction that confirmation is necessary. 36 Cyc. 1142-1147; 105 Ark. 261.

WOOD, J., (after stating the facts). 1. The act of 1907, page 285, approved March 26, 1907, under which this suit was instituted for the purpose of enforcing the collection of delinquent taxes against the lands in controversy, provides that ''Said suit shall be conducted in accordance with the proceedings and practice in° chancery courts in this State except as otherwise provided herein.''

There is no exception anywhere in the act to the effect that sales made by order of the chancery court in pursuance of the act shall not be reported to and con-

firmed by the court. Therefore, by the express terms of the statute the suit to enforce the liens declared against the lands for the delinquent taxes must be "conducted in accordance with the practice and proceedings of chancery courts in this State."

It is in accordance with the practice and proceedings of chancery courts in this State in rendering judgments for amounts which, by contract of parties, or under the law, are declared and made liens on land, and in enforcing or collecting such judgments by ordering a sale of the land to have a commissioner appointed to execute the orders of the court. In such cases the sales are strictly judicial sales, made by the court through its officer appointed for the special purpose, and it is the uniform rule in this State to have the proceedings of the commissioner appointed by the court for the purpose of executing its orders report the sale to the court for its approval and confirmation before the sale is complete. *Sessions* v. *Peay,* 23 Ark. 41; *Thomason* v. *Craighead,* 32 Ark. 391; *Wells* v. *Rice et al.,* 34 Ark. 346; *Apple* v. *Kelley,* 47 Ark. 413; *State National Bank* v. *Neel,* 52 Ark. 110; *Stotts* v. *Brookfield,* 55 Ark. 307.

The sale of the lands under the decree of chancery court in the instant case was therefore not complete until the commissioner had made his report and until the sale had been confirmed. See *Miller* v. *Henry,* 105 Ark. 261. The court, being the vendor, would have no other way of knowing whether the orders of the court, in pursuance of law, had been carried out by the commissioner.

The provisions of the act are to the effect that "immediately after such sale said commissioner shall, by proper deeds, convey to the purchaser the lands so sold and the title to said lands shall thereupon become vested in such purchasers as against all others whomsoever, and such deeds by the commissioner, when duly executed in substantial conformity to the provisions of this act and recorded, shall be received as evidence in all cases showing an indefeasible title in such purchasers, unassailable in either law or equity." These provisions are not irrec-

oncilably in conflict with the view that the sale is not complete until confirmed by the court. The confirmation of the report of the commissioner showing the approval of the sale, of course relates back and takes effect and makes the sale complete as of the date when the same was made, and makes the deeds valid as of the date they were executed.

The petitioners, therefore, were in apt time in filing their exceptions and their petition objecting to the confirmation of the sale, and asking that the sale, for the irregularities set up, be set aside, and that the deeds be cancelled, etc., as a cloud on their title. The attack they make, therefore, is not collateral, but a direct proceeding to set aside the sale.

2. But while confirmation was necessary before the sale became complete it was the duty of the court, in the absence of fraud, irregularity or mistake affecting the validity of the sale, to confirm the same and to approve the deeds made to the appellant, Wilkins. *George v. Norwood*, 77 Ark. 216; *Banks v. Directors St. Francis Levee District*, 66 Ark. 490; *Robinson v. McClintock*, 86 Ark. 255.

The only question therefore remaining to be considered is, whether or not the sale was void for fraud and irregularities. We find that the notice of sale was given in the manner and form as required by law, and in accordance with the decree ordering the lands to be sold. The price paid by Wilkins for the land was an amount equal to the taxes, interest, penalty and costs assessed against the lands by the court in its decree.

The law authorized the lands to be proceeded against "for the collection of such assessments, installments, interest and fee and costs due thereon." There was no evidence tending to show that the lands were offered for sale or sold for less than the amount owing and due thereon, as declared by the court in its decree. Where the law authorizes land to be sold for taxes, penalty, interest and costs as determined by the court in its decree to be due against the lands, if the lands, when offered

at public sale upon open and free competitive bidding, bring no more than that amount, it can not be said that the purchaser who offers such amount for the lands, and whose offer has been accepted, has paid an inadequate price.

Speaking of judicial sales generally, in *George* v. *Norwood, supra,* we said: "A judicial sale will not be set aside on account of mere inadequacy of price unless the inadequacy be so gross as to shock the conscience or raise a presumption of fraud or unfairness." See also *Carden* v. *Lane,* 48 Ark. 219.

When one pays for the lands the amount of the judgment authorized against them under the statute, and no one, under fair competition in bidding, is willing to pay more, it can not be said that the purchaser paid an inadequate price.

The sale was not void because the sum of $2 was added as a part of the costs of the same for each forty-acre tract on account of the deed made by the commissioner to the purchaser. In a judicial sale an erroneous or excessive item included in the costs will not render the sale void. The matter being before the chancery court for confirmation, the court can see that the decree is correct and that justice and equity is done by eliminating the erroneous item of costs before confirming the sale.

3. The last question to be considered is, whether the chancery court erred in refusing to confirm the sale because of alleged collusive bidding. This was tried as an issue in the case and proof, without objection, was taken tending to establish the fact that there was collusion among the bidders at the sale whereby it was agreed that certain parties should have the privilege of bidding on certain tracts that were offered for sale.

This is purely a question of fact, as to whether any such collusion existed, and it could serve no useful purpose to set out in detail and discuss the evidence bearing upon this issue. The evidence concerning it is somewhat voluminous. The court made a general finding in

favor of the petitioners on all the issues. This would include the issue as to whether or not there was collusive bidding. We are of the opinion that a finding to the effect that there was an agreement among the parties bidding that they would not bid against each other for the particular tracts that each wanted and purchased at the sale is supported by a preponderance of the evidence. Certainly such a finding would not be clearly against the weight of the evidence. We are convinced, after a careful consideration of all the testimony concerning this issue, that there was not that open, free, fair and competitive bidding which the law contemplates when lands are sold at a judicial sale.

We find nothing in the record estopping the appellee, Pierce, from seeking to prevent the confirmation of the sale because of his having accepted the excess over what his lands sold for at the sale. The testimony clearly shows that there was no acquiescence on his part in the sale, and that the money he accepted was received by him in ignorance and under a misapprehension of the facts concerning the sale.

The decree of the chancery court is therefore correct and it is affirmed.