## SCHAAP *v*. ROBINSON.

## Opinion delivered February 25, 1918.

1. JUDICIAL SALES—COLLUSIVE BIDDING—VALIDITY OF PURCHASE.—
   Where two persons agree to bid in a stock of goods at a bankrupt
   sale, by bidding against each other up to a certain price, and dividing
   the profits derived from the transaction, the validity of such an
   arrangement depends upon the intention by which the parties are
   animated, and the object sought to be accomplished; if the object is
   fair, without the intention to prevent competition, the agreement
   between the parties will be sustained.

2. JUDICIAL SALES—COLLUSIVE BIDDING. —Mere combination to bid
   at a judicial sale does not of itself amount to such fraud as to render
   the contract unenforceable as between the parties, or to constitute
   grounds to set the sale aside.

3. JUDICIAL SALES—COLLUSIVE BIDDING.—A. and B. were creditors of
   a bankrupt, C., and in order to bring a good price for the bankrupt
   stock of goods, agreed to bid against each other up to an agreed sum,
   and to divide the proceeds from such transaction. A. purchased
   the stock. *Held* B. could enforce the agreement between the parties.

Appeal from Johnson Circuit Court; *A. B. Priddy,*
Judge; affirmed.

*Winchester & Martin,* for appellant.

1. The contract was void as against public policy, as
being an agreement not to compete at the sale or stifle
bidding.   40 Ark. 251; 111 *Id.* 158; 53 *Id.* 351.

2. The court erred in its instructions. A court
should not single out facts and emphasize them.   105
Ark. 467; 62 *Id.* 312; 57 *Id.* 520; 43 N. Y. 147.

### STATEMENT OF FACTS.

C. E. Robinson sued John Schaap for the sum of
$325, which he alleges to be due him as one-half of the
profits of the resale of a stock of drugs which he alleges
Schaap had bought at a bankruptcy sale for their joint
benefit.   Schaap defended on the ground that the contract
between him and Robinson was void because it was made
to prevent competition at the bankruptcy sale.

According to the testimony of C. E. Robinson and G.
O. Patterson, J. T. Farmer operated a drug store in the
town of Clarksville, in a store building belonging to C. E.

Robinson. Farmer became a bankrupt and his stock of goods was advertised for sale by the referee in bankruptcy. C. E. Robinson and John Schaap, a wholesale druggist at Fort Smith, Arkansas, were both creditors of the bankrupt estate. Schaap came to Clarksville, to attend the sale and went into the office of Doctor Robinson to confer with him about it. Robinson had other prospective tenants and was anxious for the stock of drugs to be taken out of his store, but both he and Schaap were anxious to make the stock bring as much as possible at the sale. Finally it was agreed that Schaap should buy in the stock of drugs for their joint benefit and that Doctor Robinson would let the drugs remain in his building until they were sold, provided the purchaser would pay him as much rent as he could get from other prospective tenants. At the time there were other tenants who had spoken to Doctor Robinson about renting the store building. It was also agreed between them that they should bid against each other up to $600. This was done for the purpose of inducing some other person to bid, in which event they intended to run it up on him as high as they could. Patterson made the first bid for Robinson. Then Schaap made a bid and Patterson made a second bid. Seeing that no one else was going to bid, Patterson quit bidding when he had bid $600 and Schaap bought the goods for $602. The object in both bidding was to get somebody else interested in bidding for the goods and thus get more for them. Robinson permitted the goods to remain in his store building until they were resold. Schaap resold them for $1,250.

John Schaap testified that he went to Clarksville, to attend the sale of the Farmer drug stock under bankruptcy proceedings; that he spoke to Doctor Robinson about the matter and told him he had been informed that he did not want any drug store in his building; that the doctor told him this was true, and that any one buying the stock at the sale would have to move it; that he finally told Doctor Robinson that if he could buy the stock for $600 that he could sell it for $850 and that he would split

the difference with him if Robinson would rent his store for $25 per month; that Doctor Robinson finally agreed to his proposition, and that either the doctor or Mr. Patterson, his attorney, then suggested that they would not bid at the sale; that he told them he wanted them to bid because he was afraid that if the referee found that he was the only bidder that he would not approve the sale; that it was distinctly understood that Mr. Patterson was to bid $500 for Doctor Robinson; that he was to bid $550, that Patterson would bid $600 and that he would bid a couple of dollars more; that this agreement was carried out and that he purchased the stock of goods for $602; that the sale was confirmed; that after he had purchased the drugs, that he intended to sell them to Lee Arrington, who had agreed to pay $850 for them, provided he could rent the building for $25 per month; that Doctor Robinson declined to let Arrington have the building for $25 per month, and on that account Arrington did not purchase the goods; that he finally sold the drugs to Mr. Lewis of Pettigrew, Arkansas, for $1,250; that he paid rent to Doctor Robinson after the sale until the goods were sold to Lewis; that Doctor Robinson first broke the contract by refusing to rent the store for $25 per month as agreed upon before the sale; that he never heard until it was stated on the stand by Doctor Robinson and Mr. Patterson that the purpose of the agreement that Doctor Robinson and himself should both bid for the stock was to try to induce other persons to bid at the sale; that no such statement was made by either of them to him; that the only agreement was that they would bid up to $600 and then let him have the stock for whatever amount over that he could bid it in for.

The jury returned a verdict for the plaintiff for the sum of $125, and from the judgment rendered the defendant has appealed.

HART, J., (after stating the facts). It is the contention of counsel for the defendant that the testimony of the plaintiff himself shows there was an agreement between the parties not to compete at the bankruptcy sale

and that the object of making the agreement was to avoid competition between them. Reliance is placed upon the case of *Woodruff* v. *Berry,* 40 Ark. 251, and *Nash* v. *Delinquent Lands,* 111 Ark. 158, to sustain this proposition.

In the first mentioned case, the court held that an agreement between several parties that one of them should bid in his own name at a public sale, or the letting of a contract, and share the profits, is against public policy and voidable, if either the intention the effect or the necessary tendency of the combination be to stifle or limit competition in bidding. The court recognized, however, that the parties might show by proof that the bidding was for the joint prosecution of a business enterprise, and not a mere device to shut off or reduce competition.

(1-3) In the latter case the court said that a finding to the effect that there was an agreement among the parties bidding that they would not bid against each other for the particular tracts of land that each wanted and purchased at the tax sale, was supported by a preponderance of the evidence. It is well settled that the mere combination does not of itself amount to such fraud as to render the contract unenforceable as between the parties, or to constitute grounds to set aside the sale.

In *Phippen* v. *Stickney,* 3 Met. (Mass.) 384, it was said: "When such an agreement is made for the purpose and with the view of preventing fair competition and by reason of want of bidders to depress the price of the article offered for sale below the fair market value, it will be illegal and may be avoided as between the parties as a fraud upon the rights of the vendor. But, on the other hand if the arrangement is entered into from no such fraudulent purpose, but for the mutual convenience of the parties and for a reasonable and honest purpose, such agreement will be valid and binding."

In the case of *National Bank of the Metropolis* v. *Sprague,* 20 N. J. Eq. 159, the court said: "There is no doubt that it is illegal for two purchasers, or intended purchasers at an auction sale, to combine not to bid against each other, and to divide in any way the profits

of purchases made under such an agreement. But all the authorities and decisions in this matter which have been brought to my notice are confined to cases in which there is an agreement between the parties not to bid or enter into competition to bid against each other, and where this agreement is the foundation of the combination to purchase for their common benefit. And the principle upon which the rule is based would apply only to such cases, and not to cases where parties joined to make a purchase for their common benefit without an agreement not to compete, although the effect of such joint purchase might be to prevent competition."

In *Marie* v. *Garrison,* 83 N. Y. 14, it was said that "the mere fact that an arrangement fairly entered into with honest motives for the preservation of existing rights and property may incidentally restrict competition at a public or judicial sale does not, we think, render the agreement illegal. The question of intent at all events is one for the jury upon the whole facts as they shall appear at the trial."

In *Wicker* v. *Hoppock,* 73 U. S. (6 Wallace), 94, the court said: "The validity of such an arrangement depends upon the intention by which the parties are animated, and the object sought to be accomplished. If the object be fair—if there be no indirection—no purpose to prevent the competition of bidders, and such is not the necessary effect of the arrangement in a way contrary to public policy, the agreement is unobjectionable and will be sustained." To the same effect see *Hopkins* v. *Ensign* (New York Court of Appeals), 9 L. R. A. 731; *Gulick* v. *Webb* (Neb.), 43 Am. St. Rep. 720; *Kearney* v. *Taylor,* 15 Howard (U. S.) 493; *Holmes* v. *Holmes,* 3 Rich. Eq. (S. C.), 61; *Buckner* v. *Chambliss,* 30 Ga. 652; *McMinn's Legatees* v. *Phipps, Admr.,* 3 Sneed (Tenn.) 196; *Braden* v. *O'Neil* (Penn.), 63 Am. St. Rep. 761, and *Smith* v. *Ullman,* 58 Md. 183, 42 Am. Rep. 329.

The testimony of the plaintiff himself and of Mr. Patterson brings the case within the rule just announced.

It is also contended by counsel for the defendant that the contract is unenforceable as between the parties because both of them, according to the testimony of the plaintiff himself, bid at the sale. According to the testimony of the defendant, he and Doctor Robinson both bid at the sale for the purpose of making it appear that there was more than one bidder, so that they would be more likely to secure a confirmation of the sale in the bankruptcy court. This, if true, would not render void the contract on the ground of public policy, but would be a fraud upon the court and would be good grounds for preventing the confirmation of the sale and would also amount to such a fraud as would prevent the parties from enforcing the contract between themselves. According to the testimony of the plaintiff and of Mr. Patterson, the parties had no such intention in bidding at the sale. These witnesses testified that both parties bid at the sale thinking that thereby they might induce other persons to become interested and bid against them and thus make the property bring a greater price. The question of the intent of the parties in this respect was submitted to the jury upon proper instructions. The respective theories of the parties in the whole case was fully given in appropriate instructions under the principles of law above announced. It is true the jury did not allow the plaintiff the full amount sued for, but that is not a matter of which the defendant can complain. There was evidence of a substantial character to support the verdict of the jury and we find no reversible error in the record.

The judgment will, therefore, be affirmed.