DUNCAN, WYATT & CO. v. A. M. TAYLOR ET AL.

(Case No. 1956.)

1. CHATTEL MORTGAGE — STATUTE CONSTRUED.— A chattel mortgage given on a stock of goods to secure the payment of a debt was duly recorded. Under the provisions of the mortgage, the mortgagee took possession of the goods. On the same day, but after the goods were in the hands of the mortgagee, other creditors attached them as goods of the mortgagor. Judgment was rendered below in favor of the mortgagee. On appeal it was maintained by the appellee that the act of March 24, 1879, was void under section 35, article 3, of the state constitution, which provides: "That no bill shall contain more than one subject-matter, which shall be expressed in its caption," because in an act relating to the assignments of insolvent debtors for the benefit of creditors was included a section invalidating all liens on stocks of goods exposed for sale in the usual course of trade, etc. *Held:*

(1) That the object of the statute was to bring about a general distribution of all the assets of an insolvent debtor, not exempt from execution, among such of his creditors as would accept under the assignment and release the debtor from further liability.

(2) That in order to accomplish this end it was necessary that no portion of the debtor's estate liable to execution should be concealed for the benefit of himself or of any one else colluding with him.

(3) That to allow an insolvent debtor to protect his stock under a lien and to carry on his business subject only to account for the profits to the party holding the lien, and who would share in the proceeds to the exclusion of other creditors, would wholly defeat the design of the statute, which was intended as much to bring about assignments of insolvent debtors as to procure an equal distribution of the assets after an assignment had been made.

(4) That the subject-matter of the act being assignments for the benefit of creditors, provisions in it avoiding all such liens as would allow the

debtor merchant to remain in possession of his stock and sell it in the usual course of trade are in furtherance of the intention of the act and germane to its subject-matter.

(5) That the seventeenth section of the statute is constitutional and invalidates every lien coming within its provisions; the property subject to the lien remaining subject to executions or attachments in favor of creditors just as if no mortgage had been given.

2. CHATTEL MORTGAGE.— The chattel mortgage act contemplates the record of such instruments as are in themselves valid, but does not make valid that which the law has absolutely prohibited.

3. CONSTRUCTION OF STATUTES.— Statutes *in pari materia* should be so construed as to preserve all their provisions, though apparently in conflict, rather than that one should be held destructive of another.

4. SAME.— The wording of section 17 of the act relative to assignments prohibits all liens on stocks of goods exposed to sale in the ordinary course of trade, whether the liens contemplate replenishing the stock or not.

5. DISTINGUISHED.— This case distinguished from First National Bank of Texas *v.* Lovenberg, 506, *supra.*

APPEAL from Red River. Tried below before the Hon. R. R. Gaines.

E. H. Brittan, a hardware merchant in Clarksville, Texas, gave Taylor & Chambers, attorneys, a mortgage on his stock of goods to secure a number of creditors whose claims were in the hands of Taylor & Chambers for collection. This mortgage was given on the 31st day of October, 1881, and on the 14th day of November following Taylor & Chambers took possession of the goods by virtue of the provisions of the mortgage. On the same day, but after they had acquired possession of the goods, the appellants attached them as the property of E. H. Brittan.

This suit was instituted by Taylor & Chambers against E. H. Brittan, the appellants, and other attaching creditors, asking for an injunction, receiver, etc.

The defendants answered, alleging among other things that the mortgage was fraudulent and void in law and in fact.

The court held that the mortgage was valid, etc. From this judgment an appeal was taken to the supreme court.

*Sims & McDonald,* for appellants.

*Taylor & Chambers,* for appellees, cited: Crow *v.* Red River Co. Bank, 52 Tex., 362; Peiser *v.* Peticolas, 50 Tex., 638; Jones on Chattel Mortgages, 178; Nash *v.* Norman, 5 Mo. App., 545.

WILLIE, CHIEF JUSTICE.— In the case of First Nat. Bank of Texas *v.* Lovenberg, Assignee, etc., decided a few days since, it was held that liens coming within the purview of the seventeenth section of

the act of March 24, 1879, regulating assignments for the benefit of creditors, were absolutely void. The question in that case arose between the mortgagee and an assignee for the benefit of creditors, and no point was raised as to the constitutionality of the above section of the assignment law.

In the present appeal it is urged that this section is invalid, being within the prohibition of art. 3, sec. 35, of our state constitution, which provides that no bill shall contain more than one subject-matter, which shall be expressed in its caption.

The caption of the act of March 24, 1879, is: "An act in relation to assignments for the benefit of creditors, and to regulate the same, and the proceedings thereunder."

In National Bank v. Lovenberg, above cited, we held that the intent of this act was to bring about a general distribution of the assets of an insolvent debtor among all his creditors, or among such as would accept of the assignment and release the debtor from all further liability. In order to bring about this result, it was requisite that there should be no concealment or reservation of any portion of the insolvent's estate liable to execution, for the benefit of himself or of any other person colluding with him to defeat a fair and honest assignment. It was further held that, in the case of merchants, this object of the law would be defeated if the debtor could, under the protection of a lien upon his stock in trade, given to one or more creditors, continue to sell his goods in the usual course of trade. This would allow him the same control of his mercantile business as before, and place it in his power to enjoy all its benefits subject only to an accounting for a sufficient amount of the proceeds to satisfy the creditors with whom he had treated for such an advantage.

The effect of such an arrangement upon assignments for the benefit of creditors is very apparent. No merchant would ever make an equal division of his assets amongst all his creditors and suspend his business, when he could continue business with the stock then on hand, by sharing its proceeds with a portion of his creditors to the exclusion of the remainder. It is as much the design of the act to bring about an assignment in case of the insolvency of the debtor, as to effect a fair and equal division in case the assignment should be made. The latter would necessarily result from the former, if the provisions of the law were faithfully carried out. The subject-matter of legislation in the enactment of the above statute being assignments for the benefit of creditors, and the object of the statute being what we have stated, it is clear that a pro-

vision avoiding all such liens as allow the debtor merchant to remain in possession of his stock, and sell it in the usual course of trade, is in furtherance of the intention of the act, and germane to its subject-matter.

We therefore think the seventeenth section of the statute constitutional, and that its provisions must have full force, and be construed so as to effect the object for which they were enacted. This object would be defeated if the lien could be avoided only in case a general assignment was subsequently made. If the forbidden instruments are sustained, a subsequent general assignment will seldom occur.

If no one but the assignee in a general assignment can take advantage of the invalidity of the lien, then, as the creation of the lien would ordinarily prevent the appointment of an assignee, such liens could be attacked only in exceptional cases. The illegal mortgage would defeat the object of the statute, and, by so doing, a lien denounced by law would, by reason of its own unlawful result, be preserved and enforced. A construction leading to such an absurdity cannot, of course, be adopted.

We think the proper construction of the statute makes any instrument or lien coming within the purview of the seventeenth section absolutely void. The property upon which the attempt has been made to fasten it remains in the same condition as if no effort had been made to create the lien. Hence it is liable to attachment or execution for the mortgagor's debts, in the same manner and to the same extent as if he had not sought to subject it to the payment of the claims of the creditors named in the mortgage.

This disposes of another point made by the appellees' counsel, viz.: That the chattel mortgage act, being later in date, must prevail over the assignment law; and the present mortgage, having been duly recorded under that act, must be held good as against subsequent attaching creditors.

The chattel mortgage act contemplates the record of such instruments as are in themselves valid and legal. It avoids mortgages, otherwise valid, as against certain classes of creditors, purchasers and lienholders if not duly recorded; but it does not propose to make good that which the law has absolutely forbidden. The assignment law having declared the mortgage in question void and of no effect, as against the general policy and design of the assignment law, it is clear that the mere act of recording the illegal instrument can give it no validity. It would not render it any the less destructive of the objects of the statute regulating assign-

ments, nor prevent the evils necessarily flowing from the execution of a mortgage like the present and with its provisions and incidents.

This view is decisive of the point made without resorting to that principle in the interpretation of statutes *in pari materia* which requires that they be so construed as to preserve all their provisions, though apparently conflicting, rather than that one should be held destructive of another.

It is also contended that the seventeenth section of the assignment act prohibits only such liens as contemplate a replenishing of the stock of goods left in charge of the mortgagor. The language of the statute is capable of no such interpretation. The prohibited lien is that "attempted to be given by the owner of a stock of goods daily exposed to sale in parcels in the regular course of the business of such merchandise, and contemplates a continuance of possession of *said goods*, and control of said business by sale of *said goods* by said owner." The law defines the forbidden possession to be that of the very goods mortgaged, and renders illegal a control of the business such as arises from the continued selling of these identical goods by the owner who has mortgaged them. Nothing is said in the act about replenishing the stock, and selling the newly acquired goods; but the illegal design is complete, and the continued possession and control of the business denounced by the statute exists, if the owner controls and sells the goods mentioned in the instrument attempting to create the mortgage. We have no right to engraft upon the statute any conditions or provisions not placed there by the legislature. We think the present mortgage, taken in connection with the verbal agreement attending it, and with the fact that the mortgagor continued in possession of the goods and control of the mercantile business as before, was wholly void and passed no title to the appellees. The goods were liable to the attachment of Duncan, Wyatt & Co., and the court below erred in not rendering judgment in their favor. The judgment will be reversed and rendered here, that the appellees take nothing by their suit, and the appellants go hence without day and recover of the appellees their costs in this court and the court below.

REVERSED AND RENDERED.

[Opinion delivered March 20, 1885.]