### JOHN A. BERGEN V. THE PRODUCERS' MARBLE YARD.

#### No. 6244.

1. **Leading Questions.**—Where the witness had been in the employ of the party inquired of for several years, and when his departure was a matter of notoriety, it was not error to overrule objection to the question as leading and the answer in response, following: "State whether J. T. Smith left Cleburne in September, 1884, and who did he leave in charge of his business to run it until he returned?" Answer: "He left Cleburne on or about September 22, 1884, and left me in charge of his business."

2. **Declarations in Disparagement of Title.**—In a suit involving title to personal property and attacking a sale, it is error to admit in evidence against a defendant the declarations of a prior owner in possession, in absence of testimony of the acting together in pursuit of a common fraudulent intent by the defendant and the maker of the declarations offered.

3. **Secondary Evidence.**—See testimony held sufficient to admit secondary evidence of the existence and copy of a letter.

4. **Fraudulent Judgment.**—Voidable judicial proceedings may be taken as circumstances for whatever weight the jury may give them as bearing upon the existence of a common fraudulent purpose between the parties—such purpose affecting the rights of others adversely.

5. **Bona Fide Purchaser.**—Where a debtor made a mortgage to a creditor, the creditor acting in good faith and taking the security solely for his own benefit, and ignorant of any fraud on part of the creditor, a purchaser under a foreclosure sale under such mortgage, having notice of a fraudulent intent on part of the debtor, would take a good title by reason of the good faith of the mortgagee. It is error to instruct a jury otherwise.

6. **Mortgage.**—A chattel mortgage unless otherwise drawn contemplates that the possession remain in the mortgagee; but it does not contemplate in case of a mortgage upon a stock of merchandise that the owner should continue in the business and retail the goods.

APPEAL from Johnson. Tried below before Hon. J. M. Hall.

*Crane & Ramsey* and *James W. Brown,* for appellant. — 1. On leading questions. Able v. Sparks, 6 Texas, 349; Trammell v. McDade, 29 Texas, 360; Mathis v. Burford, 17 Texas, 152; West v. State, 2 Ct. App., 460; Carter v. State, 2 Ct. App., 16.

2. The declarations of J. T. Smith, testified to by witness Church, were incompetent. The appellant was not present, nor was there any privity of or common intent at the time between him and J. T. Smith. Garrity v. Green, 32 Texas, 202; Thornton v. Tandy, 39 Texas, 548; Thompson v. Herring, 27 Texas, 285; Carlton v. Baldwin, 27 Texas, 573; Ellis v. Valentine & Son, 65 Texas, 549; Hudson v. Willis & Bro., 65 Texas, 702; Sweet v. Wright & Spencer et al., 10 N. W Rep., 271; Thompson v. Mawkinney, 17 Ala., 362; Mines v. Studevant, 23 Ala., 664; Taylor v. Lusk, 9 Iowa, 446; Hirchfield v. Williams, 1 Pacific Rep., 201; Whitney v. Johnson, 14 Am. Dec., 634; Wolf v. Carothers, 3 Serg. & Rawles, 250; 4 W. Rep., 920; Weinrick v. Porter, 47 Mo., 293;

Criddle v. Criddle, 21 Mo., 522; Garrity v. Green, 12 Texas, 202; Whitney v. Johnson, 14 Am. Dec., 633; Gorleck v. Bowers, 4 Pacific Rep., 1138.

3. The good faith of Cy. T. Smith taking the security from J. T. Smith to secure a valid debt, made good the title obtained by appellant, even if J. T. Smith had a fraudulent design in making the mortgage and Bergen knew it. Baldwin v. Peet, 22 Texas, 717; Vanhook v. Walton, 28 Texas, 76; Greenleve v. Blum, 59 Texas, 126; Schneider v. Sansom, 62 Texas, 201; Ellis v. Valentine, 65 Texas, 549; Iglehart v. Willis, 58 Texas, 306; Frazer v. Thatcher, 49 Texas, 26.

*Davis & Plummer*, for appellee. —1. Where there is an issue as to whether the conveyance was fraudulent or not, the conduct and declarations of the grantor in respect to the estate mortgaged tending to prove or show fraud on the part of the mortgagor, is admissible when made prior to the execution of the mortgage. Hinson v. Walker & Co., 65 Texas, 107, and authorities therein cited; Wright v. Linn, 16 Texas, 42–3–4; Satterwhite v. Hicks, 57 Am. Dec., 578–9–0; Chase v. Chase, 105 Mass., 388; Bridge v. Eggleston, 14 Mass., 248; Hopkins v. Langton, 30 Wis., 379; Covanhovan v. Hart, 60 Am. Dec., 61–2.

2. Where a mortgage is taken upon a stock of merchandise of any kind, which is daily exposed to sale in parcels in the regular course of business, and the mortgagor remains in possession of the same, and there is no understanding between mortgagor and mortgagee that the mortgagor shall cease to expose said stock for sale and to sell the same, and if the mortgagor does continue after the mortgage to expose to sale in parcels, in the regular course of business, as he did before he made the mortgage, the mortgage is void as to the creditors of the mortgagor. Appendix to Rev. Stats., p. 8, sec. 17; Duncan, Wyatt & Co. v. Taylor, 63 Texas, 646–7–8; Nat. Bank v. Lorenberg, 63 Texas, 509.

WALKER, ASSOCIATE JUSTICE.—Both parties claim the stock of marble in controversy under one J. T. Smith. It is shown that in 1882 and 1883 J. T. Smith and his brother, Cy. T. Smith, were in the tombstone business in the town of Cleburne. In October, 1883, Cy. T. disposed of his interest in the business and moved to Jasper County, Mo. J. T. continued, and on September 22, 1884, he left for the alleged purpose of having a surgical operation performed, and with no definite time for his return. He left one or more persons in charge of the business, which was kept open until November 1. September 29 he executed a promissory note for $1400, due sixty days thereafter, to Cy. T. Smith, and also executed a chattel mortgage upon his stock at Cleburne, Texas. The mortgage was deposited with the county clerk of Johnson County, Texas, October 2, 1884. December 2, 1884, the note maturing, a suit was filed in the District Court by Cy. T. v. J. T. Smith, on the note, and to fore-

close the mortgage. Service was accepted by —— Boyd, agent in fact of both the parties, but with authority to accept service, waive time, etc. On same day judgment was rendered upon the note and foreclosing the mortgage, also ordering execution to issue forthwith. Execution issued at once, and the stock of marble was sold under the decree of foreclosure, and was bought by the attorney for plaintiff in execution for his client. Notice was given at the sale that "The Producers' Marble Co." would contest the validity of the sale. Bergen, the appellant, and who at once bought the stock, was present at the sale and had notice that the creditors would attack the proceedings and sale as fraudulent. The plaintiff in this suit caused an attachment to be levied upon the stock, and on January 16, 1885, Bergen filed affidavit of ownership and claim bond to try the right of property. Judgment was against Bergen, and he appeals.

The first assignment of error questions the action of the court in overruling the objections of defendant Bergen to the seventh interrogatory and answer thereto of the witness Church. The question objected to as leading is: "State whether J. T. Smith left Cleburne in September, 1884, and who did he leave in charge of his business to run it until he returned?" Answer: "He left Cleburne on or about September 22, 1884, and left me in charge of his business." By leading questions, are meant "questions which suggest to the witness the answers desired." Questions also are objectionable "which embody a material fact and admit of an answer by a simple affirmative or negative." 1 Greenleaf Ev., sec. 434. In the application of the rule much is left to the discretion of the trial judge. In this case the witness had been in the employ of J. T. Smith for years. Smith's departure in September, 1884, was notorious. Under these circumstances it was not error to allow the question, as leading the witness at once to the fact desired, viz., that he had been left in charge of the business, and the precise day of Smith's departure. Neither of these facts are implied or suggested in the question. The court did not err in refusing to exclude the testimony.

The second assignment relates to the declarations admitted of J. T. Smith, in 1884, before he left Cleburne, and when at his marble yard, made to the witness Church, that he, Smith, "had paid Cy. T. Smith for the stock, part in cash and part in notes." The rule as to admissions of assignors against assignees of a personal chattel is stated in sec. 190, 1 Green. Ev. "In such case he (the assignee) is bound by the previous admissions of the assignor in disparagement of his own apparent title. But this is true only where there is an identity of interest between the assignor and assignee; and such identity is deemed to exist not only where the latter is expressly the mere agent and representative of the former, but also where the assignee has acquired a title with actual notice of the true state of that of the assignor as qualified by the admissions in ques-

tion." Had J. T. Smith been examined as a witness these declarations could have been used in his cross-examination. In absence of any testimony to the acting together between the Smiths in pursuit of a common design, the declarations of J. T. would not affect the title of Cy. T. Smith. The testimony should have been excluded.

It seems from the testimony that sufficient search was shown to have been made for the original of the letter from Cy. T. Smith, found in the desk at the yard, in which he referred to "the eighty dollars" owing the writer by J. T. Smith. The witness Church when in charge of the marble yard noticed the letter, read it, left it in the desk when he quit, November 1, 1884. The desk was sold with the business and went into the hands of Bergen. Boyd, the agent of both the Smiths, at request of plaintiff's attorney, went to the yard, and had Bergen, Jr., in charge, search the desk for the letter. It was not found. There was no other place in which to make search or inquiry.

The judgment rendered December, 1884, upon the note and decree of foreclosure was not void as between the parties. If the proceedings formed part of the alleged fraudulent design between the Smiths to defraud the creditors, then the sale under them is voidable. The proceedings themselves may be taken as circumstances for whatever effect the jury may give them as bearing upon the existence of a common fraudulent purpose between the parties to them.

If the mortgage of September 29, 1884, was valid, the irregular and summary proceedings in foreclosing it, in absence of testimony showing injury by such haste, could in no way affect the rights of Cy. T. Smith either as plaintiff in the suit or as the purchaser at the foreclosure sale.

The mortgage was in the ordinary form of a chattel mortgage. In absence of any stipulation otherwise, it left the possession in the maker.

If Church, the agent in possession, carried on the business and sold to customers after the mortgage was executed, such act would not invalidate the mortgage, unless done with knowledge or consent of the mortgagee.

The mortgage did not withdraw the property from seizure by other creditors, and was good on its face.

The attack upon the mortgage was on ground that the note made September 29 was for a fictitious debt, in whole or part, and that the property was left in the grantor's hands for retail. Cy. T. Smith testified that the full indebtedness shown by the note existed, and that he obtained the security in ignorance of any other than honest intent on part of his brother in giving the security. While notice is brought home to Bergen, still his title would be good if it came through an honest vendor. If Cy. T. Smith took the mortgage for an honest debt, and without notice of any intent to defraud on part of his grantor, then Bergen's title would be good. This phase of the case was not given in the charge. Notice to

Bergen was made fatal to his title.   The charge given is as follows:  "You are further instructed that if you believe from the evidence that J. T. Smith was insolvent and indebted to Cy. T. Smith, and that he executed his note and the mortgage, used in evidence by the defendant, to Cy. T. Smith, not for the purpose of settling said debt, if any, owing to said Cy. T. Smith, but to hinder and delay his creditors in the collection of their debts; and if you further believe that the defendant herein had notice of such fact, if any, either actual or constructive, as hereinbefore explained, then you will find for the plaintiff, and so say in your verdict."   It is evident that the omission of the requisite notice to Cy. T. Smith to avoid the sale rendered this instruction erroneous.

The charge of the court was substantially correct upon the effect of the mortgage, if it was shown to have been contemplated by the parties that the stock should remain in the possession of the grantor, and that the business should continue under his control by sale of same by the owner. Nor was it error to instruct that the legal effect of the mortgage was to leave the possession in the owner.   It was not evidence, however, nor did the court so charge, of an intent that the owner should continue the business and retail the goods.   Nat. Bank v. Lovenberg, 63 Texas, 506; Duncan v. Taylor, 63 Texas, 645.

It is not deemed necessary to notice further the many propositions urged by appellant.

The law governing assignments and mortgages to secure creditors by insolvent debtors has been so frequently a matter of discussion in the work of this court that more should not be expected than an application of repeated rules where such will dispose of the questions raised.

For the error in the admission of the testimony to the declarations of J. T. Smith to the witness Church, and for the error above noted in the charge of the court, the judgment is reversed.

*Reversed and remanded.*

Opinion November 16, 1888.