**GHOLSON et al. v. PEEKS.**

No. 2728.

Court of Civil Appeals of Texas. Eastland.

Sept. 23, 1949.

Rehearing Denied Nov. 4, 1949.
Second Motion for Rehearing Overruled
Dec. 2, 1949.

L. R. Pearson, Ranger, Beverly S. Dudley, Ranger, Mack L. Vickrey, Dallas, for appellants.

Harrell & Harrell, Breckenridge, Ben J. Dean, Breckenridge, for appellee.

LONG, Justice.

This is a suit in trespass to try title involving a one-half undivided interest in the minerals under 184.67 acres of land in Stephens County. On February 5, 1916, Elizabeth England was the owner in fee simple of the land involved and on said date executed a first deed of trust for the purpose of securing four promissory notes payable to Bonner Loan and Investment Company aggregating $800. On the same date Elizabeth England executed a second deed of trust covering said land for the purpose of securing a note in the principal sum of $76.80 in favor of Bonner Loan and Investment Company. On April 1, 1920, after the filing and recording of said deeds of trust in the Deed of Trust Records in Stephens County, Texas, Elizabeth England conveyed to John M. Gholson an undivided one-half interest in the minerals in said land. Appellants herein are all claiming title under the aforesaid mineral deed. On February 7, 1922, L. D. Head, acting as substitute trustee under said second deed of trust, sold the land involved, including the mineral interest, to Mrs. R. A. Carter at public sale and in the manner provided for in said deed of trust and as provided by law and on the same date executed a deed as substitute trustee and conveyed the land, including all minerals thereunder, to the said Mrs. R. A. Carter. On April 18, 1922, Mrs. R. A. Carter, joined by her husband, executed and delivered to E. B. Peeks a general warranty deed covering the land herein involved and including the one-half mineral interest thereunder. Thereafter, by regular chain of transfers and by inheritance from his father, W. H. Peeks acquired the surface and all the minerals in and under the land herein involved.

Appellee W. H. Peeks instituted this suit against appellants in trespass to try title as to the one-half undivided interest in the minerals under said land. The appellants defended on the grounds that the foreclosure and trustee's deed were void by reason of usury in the note secured by the deed of trust and the failure of the legal holder of the note to appoint the substitute trustee as required by such deed of trust. A trial was had before the court without a jury resulting in a judgment for appellee for the title and possession of said undivided one-half mineral interest. Appellants have appealed.

The court filed findings of fact and conclusions of law. Appellants requested the court to make the following additional finding: "That the $76.80 installment note dated February 5, 1916, executed by Mrs. Elizabeth England and John England, payable to Bonner Loan & Investment Co., and secured by the second deed of trust lien of such date, set out in paragraph 2 of the Court's original findings, was given by the makers for and as a part of the interest payable on the first lien notes aggregating $800.00, described in the deed of trust of such date, set out in paragraph 1 of the Court's original findings."

In response to such request, the court responded as follows: "The request of the defendants that the $76.80 installment note, dated February 5, 1916, executed by Mrs. Elizabeth England and John England, payable to the Bonner Loan & Investment Company, and secured by a second deed of trust lien, on such date, set out in paragraph 2 of the Court's original findings, is a part of the interest payable on the first lien note aggregating $800.00, is hereby denied."

Appellants, in their first point, contend the court erred in denying the above request for such additional finding of fact.

Appellants had the burden of establishing their contention that the note for $76.80 upon which the foreclosure was based was usurious. 42 Tex.Jur., page 984, Par. 84. It is their contention that they established this fact conclusively. If this be true, then the court was in error in refusing to make the additional finding requested. Appellants rely upon the testimony of the witness Mrs. Azalea Woods to establish, as a matter of law, that the note for $76.80 was for part of the interest on the first lien note. Mrs. Woods testi-

fied that Mrs. England was her grandmother and that she lived with Mrs. England for many years and was living with her at the time she borrowed the money from Bonner Loan & Investment Company and executed the deed of trust. Mrs. Woods testified, in part, as follows:

"Q. Do you know from whom she borrowed any money? A. From Fred Frost and H. B. Furr.

"Q. From whom? A. Well, she borrowed this from the Bonner Loan Company.

"Q. Did Fred Frost and H. B. Furr have anything to do with it? A. Well, they came out there one Sunday morning to have the papers signed.

"Q. Do you remember what year that was? A. Well, it was sometime right after Christmas. It must have been along about the latter part of January or the first of February. I know that it was during cold weather. I was getting ready to go to Sunday School when they came out there.

"Q. Who was it that brought the papers out there to be signed? A. Mr. Fred Frost and Mr. H. B. Furr.

"Q. Do you have any independent recollection of that occasion? A. Yes, I certainly do.

"Q. What fixes that in your mind? A. Well, as I have just said, I was getting ready to go to Sunday School. It was Sunday morning, and I thought that I had rather go on to Sunday School than to stay there.

"Q. About what time of the day was it? A. Well, it was between 9:30 and 10 o'clock in the morning. We had to go to Sunday School in a buggy in those days.

"Q. Do you claim you can remember back 32 years to the penny in a business transaction? A. Yes, I can remember that.

"Q. Do you remember any other business transactions to the penny? A. Well, I can remember all of my own. I have been keeping house a good many years since then.

"Q. I am asking you if you can remember every business transaction you ever had to the penny? A. No, not all of them.

"Q. But you do remember this one? A. Yes, sir.

"Q. Did you pay the taxes on the England property as long as you lived there? A. My grandmother paid them. I wrote the checks for her to pay them with. She always paid them through the Cisco Banking Company.

"Q. You don't remember the exact amounts of any of those checks, do you? A. No, I can't say.

"Q. Who made those deposits for her? A. I made them for her. If she was able she would go to the bank with me.

"Q. You just took care of her business when it was handy for you to do so? A. Yes, I guess that's the way you would say it.

"Q. But you don't now remember any amounts of those deposits? A. No, sir.

"Q. You can't remember a single one of them? A. No, I can't."

The first deed of trust was dated February 5, 1916 and acknowledged on February 12, 1916 and the signature of Mrs. England was witnessed by Juanita Frost and H. B. Furr. The second deed of trust was dated February 5, 1916 and acknowledged on February 12, 1916 and the signature of Mrs. England was witnessed by Juanita Frost and H. B. Furr. Mrs. Woods testified positively that Fred Frost and H. B. Furr were the parties who came to the England home on the occasion of the execution of the deed of trust. As has heretofore been stated, the deeds of trust were witnessed not by Fred Frost and H. B. Furr, but by Juanita Frost and H. B. Furr. She further testified that she remembered that Frost and Furr came to her grandmother's home on Sunday at a time when she was getting ready to go to Sunday School and Church. This court will take judicial notice that February 5, 1916 and February 12, 1916, both fell on Saturday.

It will be observed that the deeds of trust were executed over 32 years before the date of the trial of this case. The trial court had an opportunity to observe the witness, her acts and conduct and the way and manner in which she gave her testimony. When her testimony is construed in connection with the statement in the deed of trust, "Whereas, Elizabeth England and John England are indebted to the Bonner Loan & Investment Company in the sum of $76.80, evidence by one promissory note of even date herewith," we feel the trial court was justified in concluding that the appellants had failed to discharge the burden imposed upon them by law to show that the $76.80 note was for interest. 17 Tex.Jur., page 902, Par. 406. We are, therefore, of the opinion appellants' Point No. 1 should be and the same is accordingly hereby overruled.

By other points, appellants contend the court erred in finding that the Bonner Loan & Investment Co. duly appointed L. D. Head substitute trustee to act instead of Shearon Bonner, designated as trustee under the deeds of trust. The deed of trust under which the sale involved was made provided that in case of death, inability or refusal of the said Shearon Bonner to act as trustee, the legal holder of said note may, in writing appoint any other person as trustee to act in his stead. Said deed of trust further provides that the trustee shall execute and deliver a deed of conveyance of the property sold to the purchaser and that any statement or recital of fact in such deed shall be prima facie evidence of the truth of such statement or recital.

There appears in the record an instrument appointing a substitute trustee which recites in part that Shearon Bonner, the trustee designated in the original deed of trust, had refused to act and that the Bonner Loan & Investment Co., the legal holder and owner of said note, "does hereby appoint and substitute L. D. Head of Stephens County, Texas, as substitute trustee * * *" The trustee's deed conveying the premises also recites that Shearon Bonner had refused to act as trustee and that the legal holder of said note did, in writing, appoint said substitute trustee. We believe the above is sufficient to support the finding of the trial court that the legal owner and holder of the note appointed L. D. Head substitute trustee. Especially is this true when such fact is not rebutted in any way. Allen v. Farm & Home Savings and Loan Association of Missouri, Tex.Civ.App., 58 S. W.2d 866.

We believe that our disposition of the two points discussed renders immaterial the other points raised by appellants and the counter points raised by the appellee and we deem it unnecessary to discuss them.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellants, in their motion for rehearing, contend it was conclusively established that the $76.80 note was for interest and the loan was, therefore, usurious. Our attention is called to evidence in the record, not discussed in our original opinion, bearing upon this issue. There was in evidence two deeds of trust executed by Mrs. Carter in favor of Bonner Loan & Investment Company renewing the $800 England note. The loan thus secured was evidenced by first and second lien notes and deeds of trust. The first lien note bore interest at 8% and the second lien note bore interest at 2% and expressly stated therein it was given as part of the interest on the first lien note. Appellants say that this transaction corroborates the testimony of Mrs. Wood and proves that it was the custom and practice of the company to take two deeds of trust in making a loan and that the second deed of trust was for interest. To our mind, the evidence just as strongly supports the conclusion that the $76.80 note was not for interest for the reason that the Carter note expressly provided that it was for interest upon the first lien, whereas the England note contained no such provision. Appellants ask us to take judicial notice of the many usury cases reported in Texas wherein it is shown that it was the custom of loan companies to make two notes and deeds of trust evidencing their loans,

the first representing the principal of the loan and a part of the interest, and the second representing the remaining part of the interest. We are of the opinion that we cannot take judicial notice of such fact and that we cannot consider it in any way in passing upon the question involved here. We have again examined the record in this case and we feel that appellants did not conclusively establish that the $76.80 note was for interest.

In connection with the points in which it is contended the court erred in finding that the Bonner Loan & Investment Company duly appointed L. D. Head substitute trustee, we failed to state in our original opinion that there is in the record an instrument signed by A. C. Rubey appointing such substitute trustee. The note involved was payable to Bonner Loan & Investment Company. The record discloses that such company was a partnership and that A. C. Rubey was the managing partner. We hold that the appointment of the substitute trustee executed by the managing partner was sufficient, and that the appointment was in all things valid.

There is another reason not discussed in our original opinion which we believe is all sufficient to uphold the judgment of the lower court in this case. The court found that by the execution and delivery of the second deed of trust, Mrs. Elizabeth England made it possible for the trustee to create the appearance of good title in Mrs. R. A. Carter by said trustee's deed. The court concluded, as a matter of law, that appellee Peeks is an innocent purchaser for value of the land involved including the one-half interest in and to the minerals sued for in this suit. The record discloses that Mrs. R. A. Carter bought the land at the trustee's sale and received a deed thereto. She afterwards conveyed it to E. B. Peeks, father of the appellee W. H. Peeks. W. H. Peeks thereafter, by inheritance and by deeds from his brothers and sisters, acquired the land and the mineral interest therein. Mrs. England never at any time questioned the validity of the sale under the deed of trust.

Appellee Peeks testified that he had no notice of any claim by appellants to the mineral interest in the land other than the record of the conveyance by Mrs. England to John M. Gholson. The deed of trust under which the sale was made was of record at the time John M. Gholson acquired the deed from Mrs. England to one-half of the minerals. We believe that the case of Slaughter v. Qualls, 139 Tex. 340, 162 S.W.2d 671, 675, is in point and supports our conclusion on the question presented here. Judge Alexander, Chief Justice of our Supreme Court, in writing that opinion, said: "It is true that under circumstances such as we have here, those who purchased interests in or took liens on the land in good faith from Mrs. Slaughter after the purported sale to her by the substitute trustee acquired good title as against Qualls; but this is so not on the theory that the title actually passed, but rather on the theory that Qualls, by the execution of the deed of trust, made it possible for the trustee to create the appearance of good title in Mrs. Slaughter, and it would be inequitable to permit Qualls now to show otherwise as against those who have purchased in good faith in reliance thereon. Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139, par. 4; Patty v. Middleton, 82 Tex. 586, 17 S.W. 909; Hill v. Moore, 62 Tex. 610; Edwards v. Brown, 68 Tex. 329, 4 S.W. 380, 5 S.W. 87."

We are of the opinion that Mrs. England, by executing the deed of trust, created the appearance of good title and that she and those claiming under her cannot now attack the trustee's deed as to an innocent purchaser for value.

After the institution of this suit, appellee Peeks secured and placed of record a correction deed from C. C. Peeks, et al., covering a 6/10ths interest in the land involved. Appellants contend that appellee Peeks cannot recover as to said 6/10ths interest for the reason that same was acquired after the institution of this suit. We do not agree with this contention. A plaintiff may amend and place himself in position to avail himself of title acquired

after the institution of his suit. Ballard, et al. v. Carmichael, et al., 83 Tex. 355, 18 S.W. 734; Collins v. Ballow, 72 Tex. 330, 10 S.W. 248. Furthermore, it was conclusively established that appellee was in possession of the land and had been for about 13 years. Appellants showed no title in the land for the reason that they had been divested of their interest therein under the trustee's deed to Mrs. Carter. "It is * * * well settled that, in an action of trespass to try title, where the plaintiff shows priority of possession of the land involved, and no title is found in the defendant, the plaintiff, by virtue of such possession, is entitled to judgment." 41 Tex.Jur., 536.

The motion for rehearing is overruled.