Victor MORAN, Jr., et al., Petitioners,

v.

Lester ADLER, Respondent.

No. B–6817.

Supreme Court of Texas.

July 26, 1978.

Rehearing Denied Oct. 11, 1978.

Goodman & Cronfel, Ada Cronfel and Raymond J. Goodman, Laredo, for petitioners.

Hall & Zaffirini, Horace C. Hall, III, Laredo, for respondent.

POPE, Justice.

The plaintiffs assert their rights as equitably adopted children to their stepmother's one-half community interest in two tracts of real estate. The defendant, Lester Adler, asserts his ownership in the land as a bona fide purchaser without notice of plaintiffs' claim that they are the adopted children of the stepmother. The trial court rendered judgment on a jury verdict for the plaintiffs but the court of civil appeals has reversed the judgment of the trial court and remanded the cause to that court. The court of civil appeals held that the jury findings about equitable adoption were not supported by clear, unequivocal and convincing evidence. 549 S.W.2d 760. We granted the writ to examine that standard of proof. We also granted defendant Adler's application which asserts his rights as a bona fide purchaser of the land without notice of the children's adoptive status. We reverse the judgments of the courts below and render judgment that plaintiffs take nothing.

The plaintiffs in this cause are Victor Moran, Jr., Xochitl Moran Hernandez, Yolanda Moran Coulter and Rene Moran. They are the children of Victor Moran, Sr. and Ester Landeros Moran. The mother died in 1929 and the next year Victor Moran married Ramona Guevara Moran. It is undisputed that the lands in suit were the community property of Victor Moran and Ramona, his second wife. Ramona died intestate in 1959, and in 1973 Mr. Moran borrowed sixty thousand dollars from the Laredo National Bank. He gave a deed of trust covering the tract to secure the loan and when he became delinquent the bank foreclosed the deed of trust lien. Lester Adler purchased the property at the foreclosure sale for seventy-five thousand dol-

lars. Adler now asserts his rights as a purchaser from the bank who, he says, was an innocent purchaser for value and without notice of the claim by the children of the first marriage that they were equitably adopted by their stepmother, Ramona. The opinion of the court of civil appeals contains a full and correct statement of the testimony upon which the jury made its findings that Ramona, the stepmother, equitably adopted the four children of the earlier marriage. The testimony need not be repeated.

■ The plaintiffs urge that the court of civil appeals erred in requiring them to prove their case by clear, unequivocal, and convincing evidence. They argue that the correct standard is the preponderance of the evidence. While there are statements in some opinions which require proof in equitable adoption cases to be "clear, unequivocal and convincing," it has now been settled that the right standard is that the evidence must be factually sufficient to constitute proof by a preponderance of the evidence.

■ The trial court submitted all of the special issues in this case in terms of the preponderance of the evidence which was the correct standard for issues and which is also the correct standard for review of the factual sufficiency of the evidence. *State v. Turner,* 556 S.W.2d 563, 565 (Tex.1977); *Meadows v. Green,* 524 S.W.2d 509 (Tex. 1975); *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960); *Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206 (1950). *Cf. Bigleben v. Stevens,* 262 S.W.2d 785, 789–90 (Tex.Civ.App.—San Antonio 1953, writ ref'd n. r. e.). Though the opinion of the court of civil appeals suggests that the evidence would be factually sufficient under the preponderance standard, we cannot say the court so held. A court reviewing the factual sufficiency of the evidence should consider both the direct evidence and the circumstantial evidence. The general rule is that in reviewing the factual sufficiency of the evidence, the court of civil appeals must consider *all* the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d

660 (1951). As this court said in a prior equitable adoption case:

> It was not necessary, however, that there be direct evidence of the agreement [to adopt]. It like any other ultimate fact could be proved by the acts, conduct and admissions of the parties and other relevant facts and circumstances. *Cava-naugh v. Davis,* 149 Tex. 573, 578, 235 S.W.2d 972, 975 (1951).

The court of civil appeals erred in its standard of review.

■ Defendant Lester Adler asserted his title to the lands by claiming that the bank took the mortgage on the property for a valuable consideration without notice of the claim by the Moran children that Ramona had adopted them. If the bank took the lien in good faith for a valuable consideration without notice, then Adler, regardless of his knowledge or notice, took good title as purchaser under the bona fide mortgagee at the foreclosure sale. *West v. First Baptist Church of Taft,* 123 Tex. 388, 71 S.W.2d 1090, 1098–99 (1934); *Bergen v. Producers' Marble Co.,* 72 Tex. 53, 11 S.W. 1027 (1888); *Lewis v. Johnson,* 68 Tex. 448, 450, 4 S.W. 644, 645 (1887); *Donald v. Davis,* 208 S.W.2d 571, 573–74 (Tex.Civ.App.—Waco 1948, writ ref'd); *Benn v. Security Realty & Development Co.,* 54 S.W.2d 146, 150 (Tex. Civ.App.—Beaumont 1932, writ ref'd); *Hunley v. Bulowski,* 256 S.W.2d 932 (Tex. Civ.App.—Texarkana 1953, writ ref'd n. r. e.); *Harper v. Over,* 101 S.W.2d 830 (Tex. Civ.App.—Eastland 1937, no writ); Annot., 63 A.L.R. 1362, 1370 (1929); 39 Tex.Jur.2d *Mortgages and Trust Deeds* §§ 69, 70 (1976). The jury made findings that the Laredo National Bank at the time it took a deed of trust on the property had notice that the plaintiffs claimed the land, that the bank had knowledge of facts sufficient to put it on inquiry, and that a diligent inquiry would have revealed the claim by the plaintiffs to an undivided one-half interest in the property. The defendant, Adler, says there is no evidence to support those findings.

The court of civil appeals, without reaching Adler's no-evidence point, held that chil-

dren who are equitably adopted are legal heirs of the adopting parent. It then distinguished an earlier decision of this court which held that equitably adopted children, unlike natural children and statutorily adopted children, receive only an equitable title from a deceased adoptive parent. The court of civil appeals quotes *Fleming v. Ashcroft,* 142 Tex. 41, 175 S.W.2d 401 (1943), and construes it to hold that the innocent purchaser doctrine protects a purchaser by cutting off an equitable title, but that the doctrine does not cut off a legal title. That case was decided in 1943. The court of civil appeals said that the Probate Code changed the status of equitably adopted children so that they are now "heirs at law." It held that equitably adopted children now inherit the same quality of title as a natural child or a statutorily adopted child, and for that reason, the court of civil appeals concluded that *Fleming* and its protection of innocent purchasers against the claim of an equitably adopted child was changed by the Probate Code.

It is our opinion that *Fleming* was not grounded upon the supposed distinction between legal and equitable title that is owned by an equitably adopted child. The real basis for protection of an innocent purchaser is explained in *Fleming* by its quotation from *Edwards v. Brown,* 68 Tex. 329, 337, 4 S.W. 380 (1887): "The policy of our laws is to protect purchasers against secret titles, whether they be legal or equitable. . . ."

The *Fleming* opinion cites three cases by this court that state that the holder of the apparent title[1] will be protected over the holder of the secret title. In *Edwards v. Brown, supra,* at issue was the rights of

heirs of a spouse when title had been taken in the name of the other spouse. The court gave this as its reason for protecting an innocent purchaser who did not have notice of a holder of the legal estate who had not recorded his deed:

> But it may be further remarked that it does not follow that, because one may have the legal title, another may not acquire a superior equity as a bona fide purchaser. The holder of the legal estate by an unrecorded deed cannot prevail over a purchaser from his grantor, who has paid value without notice of the unrecorded conveyance.

\*   \*   \*   \*   \*   \*

> If a vendee is to be required to inquire into his vendor's family history in order to ascertain whether the property was community or not, why should he not be held to inquire into his business history and thus be affected with notice of secret trusts on behalf of partners or other third parties? 68 Tex. at 332–33, 4 S.W. at 381.

*Marshburn v. Stewart,* 113 Tex. 507, 254 S.W. 942 (1923), was another case cited in *Fleming.* The reason expressed in *Marshburn* for protecting the innocent purchaser even against an outstanding legal title, was that apparent title should prevail over hidden titles:

> While in this case the apparent title and the real title are both legal titles, we do not think, in view of the legal presumption of the sufficiency of the apparent title and the burden of proof imposed by our law on the holder of the real title to prove its superiority, that it should be given greater weight in determining the burden of proof on the question of notice than is given to an outstanding equitable

---

1. The holder of the "apparent title," as used in this opinion, is the "one apparently invested with title" when viewed from the recorded instruments, "rely[ing] on the record." *Waggoner v. Dodson,* 96 Tex. 415, 422, 73 S.W. 517, 518 (1903). *See Hennessy v. Blair,* 107 Tex. 39, 42, 173 S.W. 871, 873 (1915); *Patty v. Middleton,* 82 Tex. 586, 590–91, 17 S.W. 909, 911 (1891); 4 F. Lange, Texas Practice: Land Titles and Title Examination § 335, at 29 (1961); 5 F. Lange, Texas Practice: Land Titles and Title Examinations § 813, at 244 (1961). In deter-

mining the apparent title, one may also rely on well established legal presumptions operating on the recorded facts and knowledge of whether a grantee is, in fact, deceased. Thus when the recorded instruments show the husband purchased the land during marriage, one who purchases from the surviving wife acquires the "apparent title" because of the presumption that property purchased during marriage is community property. *Sanburn v. Schuler,* 86 Tex. 116, 23 S.W. 641 (1893).

title when asserted against a legal title. The law having invested Mrs. Aiken, as survivor of the community, with the apparent legal title in fee simple to this land, and such apparent title having passed to Marshburn for an adequate and valuable consideration, we think before defendants in error can defeat the same they must further show that at the time he purchased he had notice of their rights, or that he had notice of facts sufficient to put him upon inquiry, and that such inquiry, pursued with reasonable diligence, would have necessarily discovered the real facts upon which their claim to the land involved in this suit is predicated. 113 Tex. at 513, 254 S.W. at 944.

The protection of the apparent title is also discussed in *Patty v. Middleton,* 82 Tex. 586, 17 S.W. 909 (1891), cited in *Fleming:*

There is no doubt that in many opinions this court has used expressions to the effect that the rights of heirs of a deceased member of the matrimonial union, where the land was conveyed during the marriage to the survivor, was a legal estate, and the title transmitted by descent a legal title; but this is not true as matter of law, and to so hold when words or terms are used with reference to the right of a bona fide purchaser from the survivor to whom the lands were directly conveyed would overturn all the long-recognized rules applicable to the question, for the question then is not as to the real interest which the wife or her heirs had, but as to the apparent right in the survivor as evidenced by the deeds through which the property was acquired. 82 Tex. at 592, 17 S.W. at 912.

The correct basis for the innocent purchaser doctrine is that of "the apparent title or the legal title as appearing of record" to an interest in land. *Simonds v. Stanolind Oil & Gas Co.,* 134 Tex. 332, 114 S.W.2d 226, 234 (1938). *See Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 675 (1942); *Gholson v. Peeks,* 224 S.W.2d 778, 782 (Tex.Civ.App.—Eastland 1949, writ ref'd); *Federal Life Ins. Co. v. Martin,* 157 S.W.2d 149, 152 (Tex.Civ.App.—Texarkana 1941, writ ref'd); *Burton v. Connecticut General Life Ins. Co.,* 72 S.W.2d 318, 322 (Tex.Civ.App.—Fort Worth 1934, writ ref'd).

The doctrine which protects an innocent purchaser frequently finds its application in cases in which the legal title prevails over the equitable title. That confrontation occurs so frequently that many opinions place their holdings upon a legal-equitable distinction. *See, e. g., Mitchell v. Schofield,* 106 Tex. 512, 171 S.W. 1121 (1915); *Daniels v. Mason,* 90 Tex. 240, 38 S.W. 161 (1896); *Foster v. Christensen,* 67 S.W.2d 246 (Tex. Comm'n App.1934, judgmt. adopted); *Heidelberg v. Harvey,* 391 S.W.2d 828 (Tex.Civ. App.—El Paso 1965, writ ref'd n. r. e.); *Connor v. Lane,* 355 S.W.2d 223 (Tex.Civ. App.—Waco 1962, no writ); *Landry v. Williamson,* 335 S.W.2d 400 (Tex.Civ.App.— Houston 1960, writ ref'd n. r. e.); *Stahl v. Westerman,* 250 S.W.2d 325 (Tex.Civ.App. —San Antonio 1952, no writ); *Balcomb v. Vasquez,* 241 S.W.2d 650 (Tex.Civ.App.—El Paso 1951, writ ref'd n. r. e.); *Moye v. Goolsbee,* 124 S.W.2d 925 (Tex.Civ.App.— Beaumont 1939, writ ref'd); *Home Owners' Loan Corp. v. Netterville,* 110 S.W.2d 628, 630 (Tex.Civ.App.—Beaumont 1937), *rev'd on other grounds,* 134 Tex. 30, 132 S.W.2d 93 (1939); *Love v. R. S. Allday Supply Co.,* 106 S.W.2d 830, 832 (Tex.Civ.App.—Eastland 1937, writ dism'd).

■ It is our opinion that *Fleming v. Ashcroft, supra,* correctly holds that a purchaser from the apparent legal heir, in the absence of notice to the contrary, can rely upon the presumption that there are no equitably adopted children. The reason for that rule is that the claim of the equitably adopted child is not apparent. There are neither birth nor adoption records which a purchaser can consult to protect himself. The proof of an equitable adoption is extrinsic, may come from any source, and in that sense is hidden or secret. This is particularly so after the alleged adoptive parent, Ramona Moran in this case, has died. A purchaser from the heirs must discover the apparent heirs, whether they are the

natural or statutorily adopted children, at his own peril. But a child who is adopted by estoppel affords no legal record. As this court has held before, an equitable adoption or adoption by estoppel does not afford all of the legal consequences of a statutory adoption. *Heien v. Crabtree,* 369 S.W.2d 28, 30 (Tex.1963).

There remains for consideration Adler's contention that the Laredo National Bank, through whom he acquired his title, was an innocent purchaser as a matter of law. He urges that there is no evidence either of knowledge or of facts which were sufficient to put the bank upon inquiry. We agree.

*Strong v. Strong,* 128 Tex. 470, 98 S.W.2d 346 (1936), was a holding that, as a matter of law, the defendant was protected as an innocent purchaser of an oil and gas lease. Plaintiffs were the children of Manuel Strong and his first wife Nancy Strong. Manuel and Nancy Strong acquired some land as their community property, but it was taken in his name. After the death of his first wife, Manuel and his second wife executed an oil and gas lease. The children of the first marriage brought suit in trespass to try title to recover the undivided interest which they had inherited from their mother. This court in its holding as a matter of law that the plaintiffs had not overcome the defense of innocent purchaser wrote:

A purchaser of land must search the records, for they are the primary source of information as to title and he is charged with knowledge of the existence and contents of the recorded instruments affecting the title. [Citations omitted.] He must also make inquiry as to the rights or title of the possessor, for possession is equivalent to registration, in that it gives constructive notice of the possessor's rights. . . .

The value and effectiveness of the registration statutes are to an extent impaired by the rule that possession gives constructive notice of title, but the rule is justified, or at least supported, as suggested by Mr. Pomeroy, by the fact that ordinarily the truth as to title may be readily obtained from the person in possession. We find no good reason, however, for imposing upon the purchaser the additional burden of ascertaining at his peril what may be the common reputation in the community as to the ownership of land. Reputation does not ordinarily afford a ready or dependable source of information. It has the fallibility of hearsay. Rights or titles to land should not be dependent upon the existence or nonexistence, the truth or the untruth, of common reputation, notoriety, or rumor. 98 S.W.2d at 348.

There was evidence that Victor Moran, following the death of his second wife, acting alone, executed oil and gas leases covering the property which were recorded. He executed surface leases and conveyances to tracts of land out of a larger tract, including one conveyance of two acres to one of the plaintiffs. Victor Moran was named as the sole owner in a condemnation proceeding instituted by the City of Laredo in 1970. He had previously given mortgages on the land to borrow money. At the time the bank took its mortgage on the property, none of the plaintiffs were in possession of the land, and the plaintiffs did not assert their claim prior to this suit.

Plaintiffs relied upon two items which they say were sufficient to put the bank upon inquiry. Plaintiff Rene Moran, a police officer, testified that he told virtually every member of the Laredo Police Department that he, his brother and his sisters claimed an interest in the land. That kind of reputation and hearsay evidence was rejected in *Strong v. Strong, supra.* The other item upon which the plaintiffs rely is an affidavit that Victor Moran, Sr. recorded in the Webb County deed records in 1968. He swore that plaintiffs were the natural children of him and his first wife, that they were not Ramona's natural children and that Ramona did not adopt them. The fact that Moran denied Ramona's adoption in the affidavit, argue the plaintiffs, put the Laredo National Bank on notice to make further inquiry about the negative of the statement. In

our opinion, even actual knowledge of a second marriage does not put one on inquiry about the adoption of children of the first marriage by the new spouse of the second marriage. There is no stronger reason that such facts put one on notice than existed in *Strong v. Strong.* It is our opinion that the evidence relied upon by the plaintiffs in support of the jury's findings about the Laredo National Bank's knowledge or notice of facts about the equitable adoption is no more than a scintilla of evidence. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898).

We reverse the judgments of the courts below and render judgment that plaintiffs take nothing.

BARROW, J., not sitting.