James C. Smith *vs.* Morris Ullman and Julius
Dreifus, use of Moritz Ullman.

*Public policy—Combination of parties to Purchase property
at public sale—Prayers to the Jury—Division of profits
where the Contract does not specify the Proportion in which
the Division is to be made—Legal presumption.*

There is nothing either in law or morals to prevent parties from
uniting together in good faith to purchase property, whether it is
offered at public auction, or advertised for sale and bids from
purchasers are invited.

A prayer cannot properly be granted which confines the attention of
the jury entirely to the testimony of a single witness, as not
specifying how the profits of a transaction between parties were
to be divided, when there was uncontradicted testimony from
other witnesses that it was expressly agreed the profits should be
shared equally between the parties.

Even if the contract had been silent as to the proportion in which
the profits were to be divided, the legal presumption would arise
that they were to be shared equally.

Appeal from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First Exception.*—The evidence being closed, the defend-
ant offered the two following prayers:

2. That if the jury believe from the evidence that the
said sale was in its nature, an auction sale, or a sale where
the goods were to be sold to the highest bidder, and that
the witness, Noland, as agent for the defendant, did agree
with the plaintiffs, that if the plaintiffs would not bid for
said goods, that if the said Noland, as agent for the defend-
ant, or the defendant himself bought the goods on the

defendant's bid, that the plaintiffs should have one-half or any other portion of the profits, though they may believe from the evidence, that the said Noland had, as agent of the defendant, his authority to make such agreement, or that after Noland had made the same as agent for the defendant, the defendant ratified the said agreement, their verdict must be for the defendant.

3. That if the jury believe from the evidence that the said sale was in its nature an auction sale, or a sale where the goods were to be sold to the highest bidder, and that the witness, Noland, as agent for the defendant, did agree with the plaintiffs that the said goods should be bid for and bought in the name of the defendant, with the understanding and agreement between the said Noland and plaintiffs, that the said purchase should, in reality, be made on the joint account of the defendant and plaintiffs; and should further believe, that if the said agreement had not been entered into, that the plaintiffs would have bid on their own account for said goods, or that the entry into said agreement had a tendency to prevent the said plaintiffs from so bidding, though they may believe from the evidence that the said Noland had, as agent, for the defendant, his authority to make such an agreement, or that after Noland had made the same as agent for the defendant, the defendant ratified the said agreement, their verdict must be for the defendant.

The Court (GILMOR, J.,) rejected both prayers and the defendant excepted.

*Second Exception.*—The defendant then offered the following prayer:

5. That if the jury believe from the evidence that the witness, Noland, was the agent of the defendant, and as such agent had full authority of the defendant to make the agreement with the plaintiffs as testified to by the said Noland, yet if they further believe from the evidence that no particular share of the profits was specified and

agreed upon that the plaintiffs should have, then the said agreement is void for uncertainty and their verdict must be for the defendant.

This prayer also the Court rejected.

The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, IRVING and RITCHIE, J.

*D. Meredith Reese,* for the appellant.

Any agreement whereby parties engage *not to bid against each other* at public auction or kindred sales, is *nudum pactum,* and therefore void. *Gulick vs. Ward,* 5 *Halstead,* 87; 1 *Story's Eq. Jur., sec.* 293; *Jones vs. Carswell,* 3 *Johns.,* 29; *Doolin vs. Ward,* 6 *Johns.,* 194; *Wilbur vs. How,* 8 *Johns.,* 443; *Thompson vs. Davis,* 13 *Johns.,* 112; *Story on Sales, sec.* 484; *Gardner vs. Moore,* 25 *Maine,* 142; *Haynes vs. Crutchfield,* 7 *Ala.,* 197.

Any agreement having a tendency to directly restrict or lessen bidding at any auction sale, or a sale where the goods were to be sold to the highest bidder, is void as being against good morals and public policy. (*Ibid.*)

If the contract which the parties have made is incurably uncertain, the law will not or rather cannot enforce it, and will not, on pretence of enforcing it, set up a different but valid one in its stead. 2 *Parsons on Contracts,* 561.

If an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void. 1 *Chitty on Contracts,* 92; *Cooper vs. Hood,* 28 *L. J. C.,* 212; *Bayley vs. Fitzmaunce,* 8 *E. & B.,* 664, (*S. C., H. L. Cas.,* 78.)

Some *particular* act must be agreed on; the promise must be *certain,* ascertaining the intention as to *what* is to be done or forborne. *Owings vs. Owings,* 1 *H. & G.,* 485; *Sanderson vs. Stockdale, et al.,* 11 *Md.,* 563.

*George Savage,* and *A. H. Taylor,* for the appellees.

The evidence showed this sale not to be an auction sale or one of that nature, differing from it in many particulars. The Courts have decided that the literal rule adopted only in New York, does not apply to sales like this by the Government. *Piatt vs. Oliver,* 1 *McLean,* 302.

The whole evidence, without even an apparent contradiction, shows this to be one of the cases which has been, from the first, outside of the rule invoked by the defence, viz., "Where the agreement was entered into for no fraudulent purpose, but for the mutual convenience of the parties with a view of enabling them to become purchasers." *Shippen vs. Stickney,* 3 *Metcalf,* 388, 389. *Smull vs. Jones,* 1 *Watts and Serg.,* 136; *Smith vs. Greenlee,* 2 *Devereux,* 126; *Gardner vs. Morse,* 25 *Maine,* 1, 40; *Switzer vs. Skiles,* 3 *Gilman,* 535; *McMinn vs. Phipps,* 3 *Sneed,* 196.

The witnesses, Dreifus, Ullman and Noland, all testified that the plaintiffs had not the money to purchase so large a lot, and that by carrying their information and effecting their agreement with Smith, the Government gained a purchaser, did not lose one. Of this there is no contradiction. See the comprehensive ruling on this question by the Supreme Court. *Kearney vs. Taylor,* 15 *Howard,* 519.

The defendant's second exception is to the rejection of his fifth prayer which is clearly not law. It concedes, for the purpose of the exception, the plaintiffs' case as perfectly made out, but says the agreement is void for uncertainty.

This prayer was promptly refused, because in the first place it confined the jury to the testimony of Noland, whereas Dreifus and Ullman did not contradict Noland, but were more full and particular, saying, that the equal division of profits and losses was distinctly specified. It was competent for the jury to believe Noland, who simply

omitted to say what share was specified, and Ullman and Dreifus also, who recollect the naming of the amount of interest, which Noland did not contradict.

But even if we confine ourselves to Noland's testimony the Court could not grant this prayer; for the law is well settled that in such a case, the plaintiffs and defendants, being *quoad* this undertaking partners, (*Collyer on Partnerships, p.* 53, *sec.* 53,) the law would presume an equal division of interest, or profits, equality being equity. *Story on Partnerships, sec.* 24 *and note; Story on Contract, secs.* 267, 285; 3 *Kent's Commentaries,* 29; *Roach vs. Perry,* 16 *Illinois,* 37; *Donelson vs. Posey,* 13 *Alabama,* 752; *Gellar's Case,* 1 *Rose,* 297; 5 *Wendell,* 274; *Robson vs. Curtis,* 1 *Starkey,* 78.

There is but one modification of this rule, viz., that where the amount of the interest of the respective parties is not expressed, it must be left to the jury to determine from all the facts in the case what the relative interests are. Lord ELLENBOROUGH, *Peacock vs. Peacock,* 2 *Campb.,* 45, not sustained however, by Lord ELDON, *Peacock vs. Peacock,* 16 *Vesey,* 49, who thought the legal presumption of equal shares irrebuttable. And even where parties are not technically partners, the presumption as to equal interest in the absence of express mention is the same. *Hitchings vs. Ellis,* 12 *Gray,* 451.

BARTOL, C. J., delivered the opinion of the Court.

This is a suit brought by the appellees against the appellant.

The material facts of the case as disclosed by the record are correctly stated in the appellees' brief as follows:

"The appellees were dealers in old iron, doing business in Alexandria, Va. The appellant was a dealer in the same kind of goods at Richmond, Va. Noland the general agent of appellant for the purchase of goods, was in Alexandria in October 1879, and received information from the

appellees that bids for the purchase of certain materials offered for sale by the United States Government would be opened in New York in a few days. The materials were enumerated in a published list. These goods the appellees explained were at Fort Washington, Md., and it was agreed between the appellees and Noland, acting as agent for the appellant, that the goods should be bought on the joint account of the appellant and appellees, and that they would share the profits. The appellees took Noland to Fort Washington, where they inspected the iron proposed to be bid for, they then returned to Alexandria, whence Noland reported the proposed agreement by letter to the appellant, went to Richmond and in person made the same report to the appellant, who authorized him to return to Alexandria and conclude his agreement with the appellees by sending on his bid which was done.

Ullman, one of the appellees wrote out the bid which Noland suggested should be solely in the name of the appellant inasmuch as if in the name of the appellees they might have trouble, (presumably from certain creditors of the appellees.)

The bid was sent on signed " J. C. Smith per Noland," and the goods were awarded upon it. The appellant paid the cash deposit of $746.33 according to the agreement; and resold the goods as they lay, at a clear profit of $1944, the purchaser paying the balance due the Government. The money arising from the resale was retained by the appellant, and the present suit was brought to recover from him their half of the profits, which was awarded by the jury to the appellees.

The only exceptions taken to the ruling of the Court below, which are relied on by the appellant are:

1st. To the rejection of his *second* and *third* prayers, and

2nd. To the rejection of his *fifth prayer.*

The defence to the action presented by the first bill of exceptions, is based upon the theory that the contract be-

tween the parties, by which they agreed to unite in making a bid for the articles and to share the profits between them was *nudum pactum*, because such contract was against public policy and therefore void.

There is no evidence in the case of any corrupt bargain or combination between the parties for the purpose of preventing a fair competition among bidders, nor of any evil or fraudulent purpose on their part in the transaction; but the object of their uniting was to enable them by their joint means to become purchasers of a large amount of merchandize offered in bulk, which one of them acting singly would not have the means to buy. This appears from the testimony of *Dreifus*, one of the appellees, who said: "We (meaning the appellees) were about to make the bid on that iron ourselves, the only thing I wanted was somebody with me, because the amount was too great for us to handle that amount of iron. It was probably seven or eight thousand dollars, if the whole had to be paid right down; I would have done it probably with somebody else, I wish I had and I would not have had any trouble."

There is nothing either in law or morals, to prevent parties from uniting together in good faith to purchase property, whether it is offered at public auction or as in the present case, advertised for sale and bids from purchasers are invited.

In *Small vs. Jones*, 1 *Watts & Serg.*, 129, where there was a purchase of property at sheriff's sale by several lienors who united therein, the bid being made by one of their number, and the sale was impeached as for that reason fraudulent and against public policy. Chief Justice GIBSON said: "It is not to be doubted that lien creditors as well as others may purchase jointly at sheriff's sale if all be open and fair; a combination of interests for that purpose is not necessarily corrupt, and if it be forbidden it must be by some principle of public policy. * * * *

It is as we have said the end to be accomplished which makes such a combination lawful or otherwise. If it be to depress the price of the property by artifice, the purchase would be void; if it be to raise the means of payment by contribution or to divide the property for the accommodation of the purchasers, it will be valid."

In *Pratt vs. Oliver*, 3 *McLean, C. C. R.*, 301, it was said by Judge McLEAN: "To hold that individuals may not associate together for the purpose of purchasing lands of the United States at a public sale, would be a novel doctrine, and contrary to what has been generally practiced by purchasers and that under the sanction of the government."

In support of the same doctrine we refer to *Kearney vs. Taylor*, 15 *Howard*, 494, where the subject was carefully considered. Mr. Justice NELSON speaking for the Court, after referring to several cases some of which have been cited by appellant, in which it had been held that contracts similar to the one under consideration were against public policy; said "later cases however have qualified this doctrine, by taking a more practical view of the subject and principles involved, and have placed it upon ground more advantageous to all persons interested in the property, while at the same time affording all proper protection against combinations to prevent competition;" and on page 420, after discussing the practical effects of several persons uniting together for the purpose of buying property at public sale which it would be beyond the means or ability of a single individual to purchase, remarks, "these observations are sufficient to show that the doctrine which would prohibit associations of individuals to bid at the legal public sales of property as preventing competition, however specious in theory, is too narrow and limited for the practical business of life and would oftentimes lead inevitably to the evil consequences it was intended to avoid. Instead of encouraging competition it would destroy

it." The principle decided by the case is that "if upon examination it is found that the object and purpose of the combination are, not to prevent competition but to enable, or as an inducement to, the persons composing it, to participate in the bidding, the sale should be upheld,—otherwise, if for the purpose of shutting out competition and depressing the sale, so as to obtain the property at a sacrifice."

These are the sound principles applicable to sales by public auction. If they were held as applicable here, there is nothing in the evidence that would justify us in declaring the contract in the present case void, as against public policy.

Without referring to other authorities, we are of opinion that the contract between the parties was valid, and consequently it was not error to refuse the *second* and *third* prayers of the appellant contained in the *first bill of exceptions.*

The *second* bill of exceptions was taken to the rejection of the appellant's *fifth prayer,* which was based upon the theory that the contract as testified to by *Noland* was void for uncertainty, because it did not specify what particular share of the profits the appellees were to have.

This prayer could not properly have been granted as it confined the attention of the jury entirely to the testimony of a single witness; whereas, there was uncontradicted testimony from other witnesses, that it was expressly agreed the profits should be shared equally between the parties. But even if the contract had been silent as to the proportions in which the profits were to be divided, the legal presumption would arise that they were to be shared equally. In support of this proposition, many authorities might be cited; we refer only to *Peacock vs. Peacock,* 16 *Sumner's Vesey,* 49, (*and notes;*) 3 *Kent Com.,* 29; *Story on Partnership, sec.* 24; *Roach vs. Perry,* 16 *Illinois,* 37; *Donelson vs. Posey,* 13 *Alabama,* 752.

Finding no error in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed.*