GAINESVILLE OIL & GAS CO., INC., et al., Appellants,

v.

FARM CREDIT BANK OF TEXAS, et al., Appellees.

No. 6–92–044–CV.

Court of Appeals of Texas, Texarkana.

Feb. 9, 1993.

H.C. McCracken, McCracken, Taylor & Nelson, P.C., Carrollton, for appellants.

John L. Tidwell, Gooding & Dodson, Texarkana, for Farm Credit and L. Don Hager.

Pat C. Beadle, Clarksville, G. David Neal, Dallas, for Allan Ward, Jerry Ward, Judy Ward, Rufus Ward, Patsy Ward and Bogata Oil & Gas.

Before CORNELIUS, C.J., and BLEIL and CHADICK (Retired), JJ.

## OPINION

CHADICK, Justice (Retired).

This is an appeal from a summary judgment. On January 23, 1990, the trial court signed and entered an interlocutory judgment granting defendants' summary judgment motion. Thereafter, the parties acted to finalize the interlocutory judgment and did so on February 18, 1992.

Appellants herein are Gainesville Oil & Gas Co., Inc. (Gainesville), and George Dean Ward and wife, Barbara Gail Ward (Ward couple). Appellees are Farm Credit Bank of Texas (Bank), Allan S. Ward, Jerry N. Ward, Judy Ward, Rufus Ward, Jr., Patsy Ann Ward, and Bogata Oil & Gas Co., Inc. (Bogata group). Gainesville and the Ward couple filed a joint brief, but the Bank and the Bogata group filed separately.

The land in suit is two separately described tracts in Red River County, one containing forty-four acres and the other twenty acres. The Ward couple, by deed of trust dated July 23, 1984, conveyed the land to a trustee to secure payment of a promissory note described in the deed of trust instrument. The substitute trustee's deed in controversy is an instrument dated December 6, 1988, conveying the land to Allan S. Ward.

Gainesville originated the suit by filing an original petition on May 25, 1989. Thereafter, on December 8, 1989, Gainesville superseded its original petition with a Plaintiff's Second Amended Original Petition, which added the Ward couple as joint plaintiffs and dropped L. Don Hager as a defendant. The action is to set aside the substitute trustee's deed upon allegations that the Bank's and the Bogata group's claimed rights and title to the land involved are invalid because of irregularities in the foreclosure sale conducted by the substitute trustee and that the purchaser at the mortgage foreclosure sale was not a good faith purchaser for value.

In response to the Bank's summary judgment motion, Gainesville and the Ward couple state:

> [G]enuine issues of fact exist as to whether Farm Credit Bank of Texas and L. Dan Hager promised and/or led these Plaintiffs to believe that the mineral rights would not be sold at the foreclosure sale on December 6, 1988, . . . .

And in response to the Bogata group's summary judgment motion, Gainesville and the Ward couple allege the summary judgment evidence "clearly shows that genuine questions of fact exist as to whether the

purchaser of the property, Allan S. Ward, was a bona fide purchaser for value, . . . ."

The Bank and the Bogata group countered the plaintiffs' amended pleadings with separate amended pleadings and amended motions for summary judgment. The Bank's original answer was a general denial, which it repeated in answering the plaintiffs' amended petition. The Bogata group's amended answer consisted of a plea in abatement for want of necessary parties, four special exceptions, a general denial, and a special denial alleging:

Defendants specifically deny that Plaintiff held superior rights to the first lienholder, Farm Credit Bank of Texas, in that (1) Plaintiff's alleged Oil, Gas and Mineral Lease reflects that it was executed on September 18, 1987, and was subject to the July 23, 1984 Deed of Trust on the subject property in favor of Farm Credit Bank of Texas, (2) said Deed of Trust contained the clause prohibiting any sale, assignment or conveyance without the advance written consent of the Mortgagee thereunder, (3) said Mortgagee did not give its written consent to the execution of the alleged Oil, Gas and Mineral Lease in favor of the Plaintiff; and by reason thereof Plaintiff's alleged Oil, Gas and Mineral Lease was subject to the rights of said Mortgagee under said Deed of Trust in that said Deed of Trust was not subordinated to Plaintiff's alleged Oil, Gas and Mineral Lease.

## POINT I

The court erred in granting appellee's motion for summary judgment because the property was sold at a grossly inadequate price to an individual who had notice of the oil production owned by appellants and as such was not a good faith purchaser.

Slightly more than three years after execution, delivery, and recordation of the July 23, 1984, deed of trust, the Ward couple as grantors executed an oil, gas, and mineral lease covering the forty-four-acre tract and thereby conveyed a leasehold mineral estate therein to Gainesville Oil & Gas Company, Inc., but reserved to themselves a one-eighth royalty and a one-thirty-second override out of the working interest. Following default in payment of the note secured by the deed of trust, the bank foreclosed the July 23, 1984, deed of trust lien upon the entire sixty-four acres and, on December 6, 1988, at public auction sold the property to the highest bidder, Allan S. Ward. By appropriate deed, the substitute trustee, Gary M. Vaughn, conveyed the land to Allan S. Ward.

For the purpose of discussion, it will be assumed that Allan S. Ward and other parties holding by or through him or otherwise aligned with him had notice of the mineral lease and the production of oil from the forty-four-acre tract prior to and at the time he purchased the land at the foreclosure sale.

■ The appellants urge the general rule that a bona fide purchaser of realty is a purchaser who buys property in good faith for a valuable consideration without knowledge, actual or constructive, of outstanding claims in a third party or parties. The defect in their argument is that it disregards a long-settled corollary to the rule they rely upon. The corollary to the rule is that, when a lienholder takes a lien in good faith and for a valuable consideration and without notice of outstanding claims or equities, a purchaser at the lien foreclosure sale, regardless of the knowledge or notice the purchaser has, takes good title from the bona fide mortgagee. The rule and its application is found in *Moran v. Adler,* 570 S.W.2d 883, 885 (Tex. 1978), where it is said:

Defendant Lester Adler asserted his title to the lands by claiming that the bank took the mortgage on the property for a valuable consideration without notice of the claim by the Moran children that Ramona had adopted them. *If the bank took the lien in good faith for a valuable consideration without notice, then Adler, regardless of his knowledge or notice, took good title as purchaser under the bona fide mortgagee at the foreclosure sale. West v. First Baptist Church of Taft,* 123 Tex. 388, 71 S.W.2d 1090, 1098–99 (1934); *Bergen v. Produc-*

*ers' Marble Co.*, 72 Tex. 53, 11 S.W. 1027 (1888); *Lewis v. Johnson*, 68 Tex. 448, 450, 4 S.W. 644, 645 (1887); *Donald v. Davis*, 208 S.W.2d 571, 573–74 (Tex.Civ. App.—Waco 1948, writ ref'd); *Benn v. Security Realty & Development Co.*, 54 S.W.2d 146, 150 (Tex.Civ.App.—Beaumont 1932, writ ref'd); *Hunley v. Bulowski*, 256 S.W.2d 932 (Tex.Civ.App.—Texarkana 1953, writ ref'd n.r.e.); *Harper v. Over*, 101 S.W.2d 830 (Tex.Civ.App.—Eastland 1937, no writ); Annot., 63 A.L.R. 1362, 1370 (1929); 39 Tex.Jur.2d *Mortgages and Trust Deeds* §§ 69, 70 (1976).

(Emphasis added.)

■ Though Allan S. Ward had notice and knowledge of the appellants' claim of title and production of oil subject to the mineral lease at the time of the foreclosure sale on December 6, 1988, the Bank had no such notice when the deed of trust was executed and could not have had prior knowledge or notice of a mineral lease dated September 18, 1987, which was entered into over three years subsequent to July 23, 1984, the date of the deed of trust. The appellants plead the Ward couple owned fee simple title to the land at the time the deed of trust was created, and it is undisputed that the Bank's position as lienholder mortgagee is that of an innocent purchaser for value without notice. On the authority of *Moran v. Adler* and the numerous authorities therein cited, it must be held that the sale vested in Allan S. Ward good title as purchaser from the bona fide mortgagee at the foreclosure sale, free and clear of the claims of the appellants if the foreclosure sale is valid. Point of Error I is overruled.

Whether or not the land was sold for a grossly inadequate price at the foreclosure sale, as argued by appellants under Point I, is immaterial to the solution of the issues presented by the point. The inadequate consideration claim will be considered in subsequent discussion. Similarly, as an affirmative defense, the appellees argue under their replies to Point of Error I that the appellants were estopped to assert title to the land because the duly recorded deed of

trust prohibited an oil, gas, and mineral lease of the land except with prior consent from the Bank, which was not secured. This proposition will also be noticed in later discussion.

## POINT II

The court erred in issuing an ex parte order on February 23, 1990 authorizing appellants to withdraw funds from the district clerk, and further erred in establishing a supersedeas bond of $25,000.00 and at the same time permitting appellants to withdraw all funds from the district clerk.

The trial court judgment ordered, adjudged and decreed that the Bank and the Bogata group "go hence with their costs without day." At the time the suit was instituted, the Bogata group held title to the property by virtue of a substitute trustee's deed and were in actual possession, operating the oil well and selling the oil produced. Gainesville and the Ward couple did not apply for or secure orders pending trial to protect their rights or interests or for protection and preservation of the property involved. Title and possession of the property, as well as operation of the oil well and sale of oil, was not changed by the judgment entered at the end of the trial. The judgment entered simply discharged the appellees from all liability alleged against them.

Since the judgment entered did not award money, property, or foreclosure, suspension of enforcement of judgment pending appeal is governed by Tex.R.App.P. 47(f). *See State v. Schless*, 815 S.W.2d 373, 376 (Tex.App.—Austin 1991, mand. overr.). Rule 47 contains several subdivisions which together govern suspension of enforcement of judgment pending appeal in civil cases. Under Subdivision (f), the trial court may also decline to permit the judgment to be suspended upon posting of a bond by a judgment creditor, etc.

The statement of facts reporting proceedings that produced the final supersedeas or suspension of enforcement of judgment order made by the trial court suggests that the parties were under the im-

pression that TEX.R.APP.P. 47(c), the subdivision relating to land or property, governed suspension in this case. After the trial court's final hearing, the order entered confirmed a previous order that proceeds from the sale of oil be deposited with the clerk of the court and ordered that such proceeds be paid to the Bogata group and in addition set a suspension of enforcement bond at $25,000.00, which did not terminate payment of oil sale proceeds to the Bogata group.

Gainesville and the Ward couple declined to post such bond and characterize it as without function and meaningless. Their motion moves this Court, after hearing, to "enter an order setting the supersedeas bond at a fair and reasonable amount and requiring the funds received and interest at six percent placed back with the Registry of the Court...."

■ A trial court is empowered to protect the rights and interests of litigants and the preservation of property involved in litigation pending final disposition of a case by appropriate orders. *See* 4 TEX.JUR.3D *Appellate Review* § 248 (1980). Without allegations or proof of grounds therefor, Gainesville and the Ward couple's motion in this Court seeks to have conservancy and preservation of the property involved by posting a bond to suspend enforcement of the trial court's judgment which awarded neither money, property, nor foreclosure and does not disturb the Bogata group's pretrial title, possession, and operation of the property. Suspension of enforcement of a judgment and the right to preserve the property involved in litigation are not one and the same. The procedure that implements and effectuates these separate rights are different.

TEX.R.APP.P. 49(b) authorizes this Court to issue temporary orders to preserve the rights of the parties with respect to insufficiency or excessiveness of security required to stay enforcement.

■ The appellants allege in their motion to this Court that the $25,000.00 suspension of enforcement bond set by the trial court serves no function and that they declined to post it because such bond was meaningless.

In the foregoing discussion, it is concluded that, under the record, posting a suspension of enforcement bond in a fair amount is the only right movants can claim or vindicate by their motion. Clearly, appellants sought no relief by way of suspension of enforcement of judgment which they allege had no function and was meaningless. On consideration of their motion, it appeared that the only relief to which they might be entitled was rejected in advance. Their motion was properly overruled. Point of Error II is overruled.

## POINT III

The court erred in granting the summary judgment in favor of Farm Credit Bank of Texas for the reason that appellants, Barbara Gail Ward and George Dean Ward, relied on the representations of Farm Credit Bank of Texas that the oil lease would not be included in the foreclosure sale.

It will be assumed in discussions of this point that (1) appellants are shown by the record to be estopped by covenant, deed, or otherwise to assert any right or title adverse to the appellees to the property conveyed by the deed of trust and (2) that, on their part, appellants failed to produce evidence tending to prove a grossly inadequate consideration.

■ The Ward couple and Gainesville, if they suffered damage, loss, or material injury by irregularities in the foreclosure sale, are entitled to maintain a suit for relief by way of damages or invalidation of the sale. *See Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 374 (Tex. App.—Houston [14th Dist.] 1989, writ denied). Other jurisdictions have long recognized such grounds of recovery. *See Preske v. Carroll*, 178 Md. 543, 16 A.2d 291, 295 (Md.Ct.App.1940), where it is said:

It is true that any act of an auctioneer, or the party selling, or of third parties as purchasers which prevents a fair, free and open sale, or which diminishes competition and stifles or chills the sale, is contrary to public policy and vitiates the sale. *Smith v. Ullman*, 58 Md. 183, 189,

42 Am.Rep. 320; 5 Am.Jur., *Auctions,* sec. 26; 7 C.J.S., *Auctions and Auctioneers,* § 7, p. 1255.

At times relevant to this suit, Mr. Don L. Hager was president of the Federal Land Bank Association of Paris, Texas, and the Bank alleges in both its original and amended motions for summary judgment that Mr. Hager was an officer of Farm Credit Bank of Texas. His affidavit was tendered by the Bank as summary judgment evidence in the trial court to prove the records of the Bank and its predecessor, Federal Land Bank of Texas.

Until a few months before the December 6, 1988, foreclosure sale, George Dean Ward operated a grocery store and filling station in Bogata, Texas, and was employed as the pumper in charge of Gainesville's Dean Ward No. 1, the oil well involved in this litigation. Prior to this suit, George Dean Ward served as a director of the Federal Land Bank Association of Paris, Texas, the organization headed by Mr. Hager; he was a former business associate of Mr. Hager, and along with his wife enjoyed friendly relations with the management and personnel of the Paris organization as well as some of the Bank's management and employees in Austin, Texas.

The record raises a strong inference that Barbara Gail Ward was a working partner in her husband's business endeavors and was very active in the management of the couple's credit relationship with the Bank.

John Ward, Jerry Ward, and Rufus Ward are brothers of George Dean Ward, and Allan S. Ward is his nephew, the son of John Ward. These relatives of the Ward couple organized Bogata Oil & Gas Company, Inc.

The Ward couple's residence, located on the forty-four acre tract, burned a few months before the foreclosure sale. The house was insured for $125,000.00 and personal property for $68,100.00. The couple fell behind on their mortgage payments, and the insurance company did not promptly settle for the fire loss. The couple received formal legal notice from the Bank that a foreclosure sale was to be held on November 1, 1988. In a telephone conversation with a person in the Bank's Austin office, Barbara Gail Ward was advised that the foreclosure sale scheduled for November 1 would be postponed as the Bank was negotiating with the insurance company to settle the fire loss. Shortly after the couple received notice that foreclosure sale was rescheduled for December 6, 1988, Barbara Gail Ward phoned Mr. Hager and in the conversation asked if the Ward couple would lose the oil well. Mr. Hager replied, "I don't think so, why should you." A week or ten days before the December 6 foreclosure sale, Mrs. Ward called Martha Randall, an employee in Mr. Hager's office, and asked her if the oil well was included in the foreclosure sale. Mrs. Randall had her wait on the phone while she examined the records. After doing so, she stated, "I cannot find anything to indicate that the oil well is included with the foreclosure sale." She told Mrs. Ward to check the deed.

On December 5, the day before the second foreclosure sale was set, Barbara Gail Ward talked by telephone with a man she identified as Mr. Pankomein in the Bank's Austin office. In reply to her inquiry, Mr. Pankomein said he could not tell her whether the foreclosure sale would be held on December 6. He also told her that "they would have a meeting after lunch." Mrs. Ward thereupon called Mr. Hager's Paris office; he was not available, and she talked with Martha Randall. Martha Randall informed her that they would go ahead with the sale the next day. Mrs. Ward told Mrs. Randall that she, Barbara Gail Ward, needed to talk with Mr. Hager right away because the people in Austin did not know whether the sale would take place or not, telling her also that it was very important for her, Mrs. Ward, to talk to Mr. Hager before 10:00 a.m. on December 6. Mrs. Randall promised to leave a note for Mr. Hager to phone her, Mrs. Ward, as soon as he came in. On the morning of December 6, Barbara Gail Ward again phoned Mr. Hager's office and was told that he had gone to Clarksville.

On failing to reach Mr. Hager the morning of December 6, Mrs. Ward immediately phoned an insurance agent, Jerry Jones,

661

and told him the property was being sold at 11:00 a.m. He agreed to call the insurer. A few minutes later, he called back and said the Bank would not talk with them about settling the fire loss claim. Mrs. Ward immediately reported this to Mrs. Randall in the Hager office.

George Dean Ward's affidavit states: "My wife and I did not attend the foreclosure sale because we thought until about noon on December 6, 1988 that the sale would not be held" and that they did not know the well would be included in the sale and that "[w]e were led to believe that the oil well would not be included." Mrs. Ward's affidavit said she and her husband were led to believe the well would not be included and: "[O]ur children were all employed and would have been able to obtain sufficient funds to bring the note current or present a bid at the foreclosure sale if we had known the oil well was included."

All evidence favorable to Gainesville and the Ward couple, as nonmovants, must be taken as true and every reasonable inference indulged in their favor, as well as any doubts resolved in their favor as nonmovants. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975). Mr. Hager's affidavit attached to the Bank's motion for summary judgment indicates he is authorized to speak for the Bank on bank business matters. The previously detailed summary judgment evidence and inferences therefrom, favorable to the appellants, tended to lull the Ward couple to inaction and to diminish competition and stifle buyer interest in the foreclosure sale. The conduct and statements attributed to the bank officer and personnel caused the Ward couple to rely upon assurances that the well was not included in the foreclosure and to cause them to forego the opportunity to reduce their financial loss by bidding up the price at the sale or to buy or cause others to pay a better price in keeping with the Ward couple's estimate of the property's value. Point of Error III is sustained.

## POINT IV

The court erred in granting appellee's judgment for the reason that a person who pays a grossly inadequate amount for real property at a foreclosure sale cannot be a good faith purchaser.

Appellants' argument is understood to assert that the very fact that circumstances allow opportunity to purchase the property at a grossly inadequate consideration is a type or form of notice to a purchaser at a foreclosure sale of probable outstanding claims in a third party or parties that vitiates the purchaser's standing as a good faith purchaser. Appellants cite *American Savings & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975); *Tarrant Savings Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex. 1965); *Resolution Trust Corp. v. Westridge Court*, 815 S.W.2d 327 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Georgetown Associates v. Home Federal Savings & Loan*, 795 S.W.2d 252 (Tex. App.—Houston [14th Dist.] 1990, writ dism'd w.o.j.); *Greater Southwest Office Park, Ltd. v. Texas Commerce Bank National Ass'n*, 786 S.W.2d 386 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Phillips v. Latham*, 523 S.W.2d 19 (Tex. Civ.App.—Dallas 1975, writ ref'd n.r.e.); *McAnally v. Panther*, 26 S.W.2d 478 (Tex. Civ.App.—Eastland 1930, no writ). However, it is not necessary to exhaustively pursue this question, as the summary judgment proof does not contain admissible evidence tending to prove grossly inadequate consideration was paid in this instance. This deficiency in proof is failure to produce summary judgment evidence of the fair cash market value of the property at or about the time of sale.

The evidence upon value consists of affidavits and documents. The relevant portion of one affidavit says:

In view of my experience in the oil business, both as a driller and an operator, I am qualified to give an opinion as to the gross and net value of the oil reserves under Dean Ward No. 1. In my opinion the minimum gross value of the oil under Dean Ward No. 1 is $800,000.00 and the minimum net value is $400,000.00.

A second affidavit contains an opinion on value by a petroleum engineer. Attached to this affidavit is a detailed report titled "Economic Evaluation of the Bogata Oil and Gas Lease in the Shelton (Cotton Valley Field), Red River County, Texas." The affidavit states:

In my opinion, 100% of the working and revenue interest in the oil and gas reserves of Dean Ward No. 1 amounts to $536,832.00.

The report attached to the affidavit summarizes value in this manner:

### PRESENT WORTH SUMMARY

Bogata Oil and Gas Lease

100% Working and Revenue Interest

Oil/Gas Reserves and Salvageable Equipment

| | |
|---|---|
| Present Worth—Oil and Gas Reserves | $536,832. |
| Salvage Value of Tangible Equipment | 18,000. |
| TOTAL | $554,832. |

Gainesville and the Ward couple's response to the Bank's motion for summary judgment has as an exhibit an affidavit by George Dean Ward which contains a paragraph that reads:

14. Jerry Ward alleged in his amended petition filed on November 8, 1988 that the dollar amount of oil produced through September 30, 1988 was $112,828.39. At the foreclosure sale attended by John Ward, Jerry Ward and Rufus Ward, John Ward purchased in the name of his son, Allan Ward, both tracts of land we owned and the oil well for a total of $28,210.00. The purchase price being less than one-fourth of the value of oil produced to date. Dean Ward No. 1 continued to produce oil at the rate of 23 to 25 barrels a day until the foreclosure. According to papers filed by Enron as of September 30, 1989, $92,000.00 of crude oil have been produced by Dean Ward No. 1 since December 6, 1988.

Also, the appellants' brief resisting the Bank's motion for summary judgment attached as an exhibit an appraisal report made to the Bank dated May 5, 1988, which appraised the land in suit in this manner:

| | |
|---|---|
| 7. Dwelling . . . | $82,500. |
| 8. Barn . . . | 4,500. |
| . . . . | |
| 12. Totals | 87,000. |
| 13. PRESENT MARKET VALUE OF FARM | — |
| APPRAISED VALUE OF FARM | 121,000. |
| 14. Mineral ownership considered in this appraisal: *all* | |

. . . .

E. REMARKS . . .
I arrived at my AV of the property as follows:

| | | |
|---|---|---|
| 20 acre tract—$600/acre | — | $12,000. |
| 44 acre tract—$500/acre | — | $22,000. |
| TOTAL LAND VALUE | — | $34,000. |

Net Realizable Value–$94,400

(Emphasis added.)

There is a uniform failure on the part of all value witnesses to claim knowledge or state facts evidencing knowledge of the fair cash market value of the property at the time of the foreclosure sale. None of the value experts attempted to speak to the property's fair cash market value or its equivalent.

The summary judgment evidence produced is not admissible as proof of cash market value in this proceeding. *See Bryant v. Stohn,* 260 S.W.2d 77 (Tex.Civ. App.—Dallas 1953, writ ref'd n.r.e.); *Lone Star Gas Co. v. Holifield,* 150 S.W.2d 282, 285 (Tex.Civ.App.—Fort Worth 1941, no writ); *Taylor County v. Olds,* 67 S.W.2d 1102, 1104 (Tex.Civ.App.—Eastland 1934, writ dism'd); 35 TEX.JUR.3D *Evidence* §§ 195, 201 (1984); 2 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 1422 (Texas Practice 3d ed. 1980). The last-cited text discusses admissibility of cash market value evidence and says:

> Three main requirements must be noticed: First, the witness must have a knowledge of the market value if there is one. Second, his knowledge must be of values in the vicinity. Third, it must in some degree be based upon personal observation and not solely from hearsay.

However, whether gross inadequacy of consideration as used in cases of this category must be proved by a comparison of sale price to cash fair market value is a question that has not heretofore been explicitly settled. Yet, whether evidence of cash market value is essential to determination of gross inadequacy of consideration in this particular foreclosure sale should be decided. The conclusion is that proof of the fair cash market value is indispensible. In the deed of trust, the parties agreed that in the event of foreclosure the property would be sold at auction for cash. Necessarily and logically, to determine whether the price paid at the foreclosure sale was grossly inadequate, the fair cash market value of the land at the time of sale must be established. The cash consideration paid at foreclosure sale for the land must be compared with or balanced against the fair cash market value of the property at the time of the sale to determine whether it shows the consideration received is grossly inadequate. The basis for this conclusion will be discussed briefly.

It is a venerable principle of the law of evidence that facts be proven by "the best evidence the nature of the case will admit of." This rule, which is more a statement of policy than a rule of evidence, lends support to a requirement that an obligatory cash sale at foreclosure be compared with a cash fair market value of the property at the time of sale to determine whether disparity in consideration exists which renders the consideration received inadequate. In *Lee v. Sabine Bank,* 708 S.W.2d 582, 585 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.), it is said:

> [W]e have almost no real evidence of the fair market value of the vessel. But neither did the borrower and mortgagor of the vessel present any evidence of its fair market value at the time of the judicial sale. We, therefore, overrule plaintiff-appellant's point of error, and affirm the judgment of the trial court.

The court based its decision in the case solely upon the absence of proof of fair market value at the time of foreclosure sale. Language used in *Charter Nat'l Bank–Houston v. Stevens,* 781 S.W.2d at 374, and *Resolution Trust Corp. v. Westridge Court,* 815 S.W.2d at 332, recognizes disparity between bid price and fair market value as the basis for determining gross inadequacy of consideration.

In this instance there is no admissible evidence to raise an issue of fact tending to prove the consideration received for the land was grossly inadequate. Point of Error IV is overruled.

On February 3, 1992, a short time before judgment was finalized on February 18, 1992, counsel for appellants filed in the trial court a suggestion of the death of George Dean Ward. The suggestion reads:

> GEORGE DEAN WARD, one of the Plaintiffs in this suit, died on October 14, 1991. BARBARA GAIL WARD a/k/a

BARBARA WARD was appointed Temporary Administratrix of his estate on September 3, 1991 in Cause No. 6236 in the County Court, Red River County, Texas. [It is to be observed that the instrument asserts the temporary administratrix was appointed on September 3, 1991, prior to the alleged death of plaintiff on October 14, 1991.]

The Bogata group has filed a motion in this Court to dismiss the appeal. The group alleges that Barbara Gail Ward, as temporary administratrix, was not authorized to take a nonsuit as to John Ward, a defendant in the case, and that the authority of the temporary administratrix expired prior to the filing of the transcript herein. Decision on the motion was ordered carried with the case for disposition with the appeal. No party to the appeal filed a statement of facts transcribing the proceeding on the motion in the trial court or a brief in support or opposition to appellees' motion in this Court.

■ This is a cause of action which survives to the decedent's estate. Tex. R.Civ.P. 150 provides no suit shall abate because of the death of any party thereto before the verdict or decision of the court is rendered, but such suit may proceed to judgment as provided in Tex.R.Civ.P. 151. Rule 151 provides that a defendant may have suit dismissed in the trial court under certain circumstances and the procedures therefor set out. Tex.R.Civ.P. 156 provides that in a nonjury case, when a party dies after the evidence is closed and before judgment is pronounced, judgment shall be rendered and entered as if all parties were living.

■ No statement of facts has been brought forward showing either the Bank or the Bogata group undertook to exercise their rights under Rule 151 or were wrongfully denied the privilege of doing so. The record presented does not show the Court lacks jurisdiction of the appeal. In the absence of a statement of facts, it will be presumed that the trial judge acted in accordance with the facts and the law. *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex.1990); 4 Tex.Jur.3d *Appellate Review* §§ 336, 337 (1980). The motion to dismiss will be overruled.

For the reasons given in previous discussion, appellants' Point of Error III is sustained. The other three points are overruled. The three have been discussed at length, as proper disposition of the issues raised by the several points contributes to an understanding of the basis of decision on the point sustained.

Evidence tending to prove the Ward couple relied upon representations by the Bank that the oil lease would not be included in the foreclosure sale caused the Ward couple to forego their right to attend the foreclosure sale and protect their interest. Such evidence tends to show conduct by the Bank which diminished competition and stifled a free and open sale and was, therefore, an irregularity in the foreclosure that was damaging to the appellants. The evidence mentioned precludes a summary judgment as it presents a fact issue for resolution by the trier of fact. Ordering summary judgment in favor of appellees is an error calculated to cause and probably did cause the rendition of an improper judgment. Disposition of Points of Error I, II, and IV are not controlling, and decision as to them is immaterial to judgment.

The judgment of the trial court is reversed and the case is remanded for new trial.

GRANT, J., not participating.

CORNELIUS, Chief Justice, concurring.

■ I concur in the judgment and in the majority opinion, except its conclusion in discussion of Point IV that the appellants did not submit summary judgment evidence of a gross inadequacy of price. In my opinion, evidence that property having an actual value of more than $500,000.00 sold at a foreclosure sale for only $28,000.00 at least raises an inference that the property's fair cash market value was grossly in excess of $28,000.00, and thus raises a fact issue on the question whether the property brought a grossly inadequate price at the foreclosure sale.

BLEIL, Justice, concurring.

I agree that the summary judgment should be reversed and the case remanded for trial.

I agree with Chief Justice Cornelius that the summary judgment evidence tending to show that the property's value is far greater than $28,000.00 at least raises an inference that the property's fair cash market value was grossly in excess of $28,000.00. This raises the fact question of whether the property was sold for a grossly inadequate price at the foreclosure sale. To my knowledge, no "venerable principle of the law of evidence" alters this conclusion. At the time of trial questions of what evidence is or is not admissible may be presented to the trial court.