

# NUMBER 13-23-00404-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ALEJANDRO MORENO AND
ALGAMO GROUP, LLC,                                    Appellants,

**v.**

SANJUANA IDALIA VALENCIA,
ALEJANDRA RIOS, AND
ANA BERTHA BARRERA,                                   Appellees.

## ON APPEAL FROM THE 93RD DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and Cron[1]**
**Memorandum Opinion by Chief Justice Tijerina**

---

[1] The Honorable Nora L. Longoria, former Justice of this Court, did not participate in this opinion because her term of office expired on December 31, 2024. In accordance with the appellate rules, she was replaced on panel by Justice Jenny Cron. *See* TEX. R. APP. P. 41.1(a).

Appellants Alejandro Moreno and Algamo Group, LLC, appeal the trial court's temporary injunction prohibiting appellants from evicting appellees Sanjuana Idalia Valencia, Alejandra Rios, and Ana Bertha Barrera from their homes. By four issues, appellants contend that the trial court erroneously issued the temporary injunction because: (1) appellees failed to establish a probable right to relief; (2) appellee, Rios, lacked standing to assert her causes of action; (3) appellee, Barrera failed to provide evidence of a probable injury; and (4) the trial court's order is not specific. We reverse and remand.

## I.    BACKGROUND

M.A.R. Designs & Construction, Inc. borrowed money from Comack Investment, L.P. "for the purpose of purchasing and developing residential real estate. . . . M.A.R. executed several promissory notes in favor of Comack, and each note was secured by a deed of trust." *See Comack Inv., L.P. v. M.A.R. Designs & Constr., Inc.*, No. 13-22-00347-CV, 2023 WL 2807217, at *1 (Tex. App.—Corpus Christi–Edinburg Apr. 6, 2023, no pet.) (mem. op.). Three homes were built on the real property, described as Lots 4, 26, and 32. "M.A.R. allegedly defaulted on the loans, and Comack initiated nonjudicial foreclosure sales under the deeds." *Id.* M.A.R. sued Comack and Pedro "Pete" Diaz IV, substitute trustee, seeking to restrain them from foreclosing on the properties. *Id.* However, M.A.R. was unsuccessful, and on December 12, 2022, Comack foreclosed on the three properties. Appellants then purchased the three lots.

On March 23, 2023, after appellants began eviction proceedings, appellees filed

2

an original petition in intervention for wrongful foreclosure against appellants and others. Specifically, Valencia asserted that she purchased Lot 32 from M.A.R., Rios alleged that she purchased Lot 4 from M.A.R., and Barrera claimed she purchased Lot 26 from M.A.R. Appellees each claimed to have paid M.A.R. the full purchase price and claimed that M.A.R. previously pledged the properties as collateral to acquire the loans from Comack without informing them and prior to giving each appellee a deed to their respective properties.

On June 2, 2023, appellees filed an application for temporary restraining order and a request for a temporary injunction to halt appellants' eviction of them. The trial court granted a forty-five-day injunction. Appellees amended their petition adding causes of action against M.A.R. for violations of the Texas Property Code and against appellants and Comack for civil conspiracy and fraud. After holding a hearing, the trial court granted the temporary injunction, enjoining appellants from evicting appellees and setting a trial for December 11, 2023. This appeal followed.

## II.  Temporary Injunction

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Sargeant v. Al Saleh*, 512 S.W.3d 399, 408 (Tex. App.—Corpus Christi–Edinburg 2016, orig. proceeding). A temporary injunction preserves "the status quo of the litigation's subject matter pending a trial on the merits." *Id.* The status quo is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *Id.*

> To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a

3

probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by a certain pecuniary standard."

*Id.*

The burden of production rests on the temporary injunction applicant to offer some evidence of each element. *Id.* at 408–09. An applicant must only show that it is entitled to preservation of the status quo pending trial on the merits and is not required to establish that at trial it will prevail. *Id.* at 409.

A trial court has discretion to grant or deny an application for a temporary injunction. *Id.* "A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable it amounts to a clear and prejudicial error of law or it clearly fails to correctly analyze or apply the law." *Id.* The trial court may not misapply the law to the established facts in granting or denying a temporary injunction. *Id.* "We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence." *Id.* at 409–10. A reviewing court must uphold the trial court's order on any legal theory supported by the record when, as here, it does not make findings of fact or conclusions of law. *Id.* at 410. "However, our review of the trial court's decision is limited to the validity of its temporary injunction order; and we do not consider the merit of the underlying case." *Id.*

## III.  WRONGFUL FORECLOSURE

By their first issue, appellants contend that appellees failed to show that they have a probable right of recovery for their wrongful foreclosure claim. Appellees respond that

there was evidence that an irregularity in the foreclosure sale occurred because they did not receive notice of it, the sales price of each property was grossly inadequate, and the lack of notice caused the grossly inadequate sales prices.[2] Thus, appellees claim that they showed a probable right to recovery on their wrongful foreclosure claim.

## A.      Applicable Law

Borrowers that are harmed due to irregularities in a foreclosure sale may sue for wrongful foreclosure. *Gainesville Oil & Gas Co. v. Farm Credit Bank of Tex.*, 847 S.W.2d 655, 659 (Tex. App.—Texarkana 1993, no writ). A wrongful foreclosure claimant must show the following: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) (citing *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied)); *Terra XXI, Ltd. v. Harmon*, 279 S.W.3d 781, 788 (Tex. App.—Amarillo 2007, pet. denied) ("A foreclosure sale may be rendered void if there exists an irregularity, though slight, that caused or contributed to a sale for a grossly inadequate price."); *see also Pineda REO, LLC v. Lomix Ltd. P'ship*, No. 13-17-00277-CV, 2019 WL 5799990, at *8 (Tex. App.— Corpus Christi–Edinburg Nov. 7, 2019, pet. denied) (mem. op.). "Evidence must exist that the irregularity caused or contributed to the sale of property for a grossly inadequate

---

[2] "[W]hen[, as here, a] third party has a property interest, whether legal or equitable, that will be affected by . . . a [foreclosure] sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale." *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988).

5

price." *Terra XXI, Ltd.*, 279 S.W.3d at 788; *see also Pineda REO, LLC v. Lomix Ltd. P'ship*, 2019 WL 5799990, at *6.

"Before the valuation can be said to be grossly excessive, the assessed value must be so far above the fair cash market value as to shock a correct mind and thereby raise a presumption that the valuation was fraudulent or does not represent a fair and conscientious effort . . . to arrive at the fair cash market value." *Pierce v. City of Jacksonville*, 403 S.W.2d 512, 517 (Tex. App.—Tyler 1966, writ ref'd n.r.e.) (citing *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. App.—Dallas 1932, no writ)). "The cash consideration paid at foreclosure sale for the land must be compared with or balanced against the fair cash market value of the property at the time of the sale to determine whether it shows the consideration received is grossly inadequate." *Gainesville Oil & Gas Co., Inc.*, 847 S.W.2d at 663. The proponent must show that if the sale was conducted in a different manner a better price would have resulted. *Hunt v. Jefferson Sav. & Loan Ass'n*, 756 S.W.2d 762, 764 (Tex. App.—Dallas 1988, writ denied) (citing *Bellah v. First National Bank of Hereford*, 474 S.W.2d 785, 788 (Tex. Civ. App.—Eastland 1971, writ ref'd n.r.e.)).

## B.    Valencia

Valencia testified that she purchased Lot 32 for $300,000 from M.A.R. in 2013. She stated that she paid the entire balance in 2017 but did not receive a deed to the property until 2021. Valencia's trial counsel asked, "Do you know how much [your property] appraises for *now*?" (Emphasis added). She replied, "I don't know. I think three

hundred and—almost 400,000." On cross-examination, appellants' trial counsel asked, "You indicated a little earlier that you gave an opinion as to the value of the house. What was that opinion based on?" Valencia replied, "I'm not too sure on the approximate amount. I just know I've put in some money into fixing my house. After the freeze I went ahead and put some new grass and some new trees. And I take care of my house all the time." As to the foreclosure, Moreno testified that he purchased Lot 32 for $150,000 on December 12, 2022.

This is the only evidence presented regarding the value of Lot 32 at the time of the temporary injunction hearing. Valencia was not asked to state the fair cash market value of the property when it was sold at the foreclosure sale, and when asked what the property "appraises for now," Valencia said, "I don't know." Although she then stated she "thought" it was $300,000 to "almost $400,000," she later acknowledged she was "not too sure on the approximate amount." Valencia did not base her opinion on anything other than taking care of her home and installing new grass and trees on the property.

Valencia admitted that she did not know the value of the property and that she merely stated what she "thought" was "the approximate amount." This evidence does not support a conclusion that the price appellants paid for the property is grossly inadequate because there is no evidence of the fair market value of the property at the time of the sale to compare with the purchase price. *See id.* Moreover, there is no evidence that the irregularity as alleged by appellees that they did not receive proper notice of the foreclosure sale caused or contributed to the sale of property for $150,000. *See Terra*

7

*XXI, Ltd.*, 279 S.W.3d at 788; *see also Pineda REO, LLC*, 2019 WL 5799990, at *6.

**C.      Rios**

Rios testified that she purchased Lot 4 from M.A.R. in 2014 and paid $156,000 in cash. However, M.A.R. never gave Rios a warranty deed for the property although she paid the full purchase price. Rios's trial counsel asked, "Do you know more or less how much your house *currently* appraises for?" (Emphasis added). Rios replied, "Around $240,000." Moreno testified that he purchased Lot 4 on December 12, 2022, for $150,000.

Here, there is no evidence concerning the value of the property at the time of the foreclosure sale. *Gainesville Oil & Gas Co., Inc.*, 847 S.W.2d at 663. Nonetheless, even comparing the amount that Rios stated the property was appraised for at the time of the temporary injunction hearing with the price appellants paid for Lot 4, the amount paid by appellants exceeds fifty percent of the value. Accordingly, the price is not grossly inadequate as a matter of law because the assessed value is not so far above the fair cash market value as to shock a correct mind. *See Richardson*, 47 S.W.2d at 425; *see also Vaiz*, 2019 WL 1070867, at *4. Moreover, there is no evidence that the irregularity as alleged by appellees that they did not receive proper notice of the foreclosure sale caused or contributed to the sale of property for $150,000. *See Terra XXI, Ltd.*, 279 S.W.3d at 788; *see also Pineda REO, LLC*, 2019 WL 5799990, at *6.

**D.      Falcon**

Anna Falcon[3] testified that she purchased Lot 26 from M.A.R. in 2014 for $250,000

---

[3] According to the parties, Falcon is Ana Bertha Barrera's daughter.

8

in cash. Falcon's trial counsel asked, "Is your house *currently*, in your opinion, worth more than 300—I mean, 250,000?" (Emphasis added). She responded, "Yes." As to the foreclosure, Moreno testified that he purchased Lot 26 for $220,000. Again, a purchase price that exceeds fifty percent of the fair market value as a matter of law is not grossly inadequate. *See Richardson*, 47 S.W.2d at 425; *see also Vaiz*, 2019 WL 1070867, at *4. There is no evidence regarding the fair market value of the property at the time of the foreclosure sale. Nonetheless, the price appellants paid for Lot 26 exceeds fifty percent of the amount that Falcon testified her property was worth at the time of the temporary injunction hearing, even assuming it was worth $300,000. Therefore, as a matter of law it is not grossly inadequate. *See Richardson*, 47 S.W.2d at 425; *see also Vaiz*, 2019 WL 1070867, at *4. Moreover, there is no evidence that the irregularity as alleged by appellees that they did not receive proper notice of the foreclosure sale caused or contributed to the sale of the property for $220,000. *See Terra XXI, Ltd.*, 279 S.W.3d at 788; *see also Gainesville Oil & Gas Co.*, 847 S.W.2d at 659 ("A party seeking damages or invalidation of the sale under this theory must show that any damage, loss, or material injury was due to the irregularity in the foreclosure sale."); *Pineda REO, LLC*, 2019 WL 5799990, at *6.

## E.  Summary

Having determined that there is no evidence that the purchase price was grossly inadequate for any of the properties and no evidence that the alleged irregularity caused or contributed to the sales price, we conclude that none of the appellees met their burden

to show that they had a probable right of recovery for their claims of wrongful foreclosure.[4] *See Sargeant*, 512 S.W.3d at 408; *see also Labrador v. Wells Fargo Bank, N.A.*, 2014 WL 12493294, at \*2 (W.D. Tex. Sept. 23, 2014) ("Finally, Plaintiff failed to plead sufficient facts demonstrating any causal connection between a procedural defect and the grossly inadequate selling price."). We sustain appellants' first issue.

## IV.     CONSPIRACY

Next, by its first sub-issue to its first issue, appellants contend that appellees failed to show a probable right to recovery on their conspiracy claim.

A claim for civil conspiracy is made "to secure joint and several liability against a member of a conspiracy for the harm caused by any one member of the conspiracy." *Enter. Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 308 (Tex. App.—Houston [14th Dist.] 2020, no pet.). The elements of conspiracy are: (1) two or more parties; (2) an object to be accomplished; (3) a meeting of the minds on the act to be accomplished; (4) one or more unlawful acts; and (5) damages proximately caused by the unlawful acts. *Id.* "A defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Id.*

Appellees alleged in their pleadings that appellants conspired with Comack and

---

[4] We note that a mortgage servicer is only required to provide notice to the debtor. *See* TEX. PROP. CODE ANN. § 51.002 (providing that the mortgage servicer of the debt must serve written notice of the sale by certified mail on each *debtor* who is obligated to pay the debt according to the mortgage servicer's records); *Casstevens v. Smith*, 269 S.W.3d 222, 229 (Tex. App.—Texarkana 2008, pet. denied) ("We note that the controlling statutes require only that notice of [foreclosure] proceedings be given to the parties named on the requisite documents as the debtors, and not to other parties, known or unknown."). Appellees testified that they were not debtors on the loan acquired by M.A.R. from Comack and were unaware that M.A.R. had acquired the loans using the property as collateral.

others to wrongfully foreclose on their properties. However, there is nothing in the record to support appellees' claims. Appellees presented no evidence of any of the elements of conspiracy. *See id.* Thus, there is no evidence that appellants conspired with others to wrongfully foreclose on their property. Accordingly, we are unable to conclude that appellees met their burden to show that they had a probable right of recovery on their conspiracy claim against appellants. *See id.* Therefore, the trial court abused its discretion by granting the temporary injunction on this basis. *See Sargeant*, 512 S.W.3d at 409. We sustain appellants' first sub-issue to their first issue.

## V. FRAUD

By a second sub-issue to their first issue, appellants contend that appellees failed to show a probable right to recovery on their fraud claim.

> The elements of fraud are (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the defendant made the representation with the intent that the plaintiff should act on it; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff thereby suffered injury.

*Baleares Link Exp., S.L. v. GE Engine Servs.-Dall., LP*, 335 S.W.3d 833, 839 (Tex. App.—Dallas 2011, no pet.).

Appellees alleged in their pleadings that appellants had "sought to impose additional terms and conditions which are not part of the executory contract and have claimed [appellees] have violated unwritten terms. These fraudulent actions have caused harm to" appellees. However, there is nothing in the record to support appellees' claims.

Appellees presented no evidence of any of the elements of fraud. *See id.* Thus, there is no evidence that appellants committed fraud. Accordingly, we are unable to conclude that appellees met their burden to show that they had a probable right of recovery on their fraud claim against appellants. Therefore, the trial court abused its discretion by granting the temporary injunction on this basis. *See Sargeant*, 512 S.W.3d at 409. We sustain appellants' second sub-issue to their first issue.

## VI. CONCLUSION

We reverse the trial court's judgment and remand for proceedings consistent with this memorandum opinion.[5]

JAIME TIJERINA
Chief Justice

Delivered and filed on the
10th day of April, 2025.

---

[5] We need not address appellants' other issues as they are not dispositive. *See* TEX. R. APP. P. 47.1.